AMALIA CUTTING and Others v. PETER PATTERSON.[1]

February 6, 1901.

Nos. 12,445—(226).

**Foreclosure of Mortgage—Notice to Actual Occupant.**

> *Held*, on the facts appearing in this case, that the mortgagor, as the person actually occupying the mortgaged premises, was entitled to notice of the foreclosure under a power prescribed in G. S. 1894, § 6032.

Action in the district court for St. Louis county to set aside a mortgage foreclosure. The case was tried before Ensign, J., who found in favor of defendant. From an order denying a motion for a new trial, plaintiffs appealed. Reversed.

*Frank Cutting*, for appellants.

The contiguity of the two tracts and the manner in which they were used show that Larcher was an actual resident on the mortgaged premises. The fee of streets and alleys is in the abutting land owner, and is subject only to the easement of the public. The substance of the following cases is that the condemnation or dedication of a highway or alley across land does not divide such tract into two separate parcels, and a person having his dwelling and buildings on one side of a highway and the cultivated portion on the other is an actual resident on the whole land. Hassett v. Ridgely, 49 Ill. 197; Gregg v. Bostwick, 33 Cal. 220, 227; West River v. Gale, 42 Vt. 27; Bunker v. Locke, 15 Wis. 702; Kresin v. Mau, 15 Minn. 87 (116); Hornby v. Sikes, 56 Wis. 382, 385; Randal v. Elder, 12 Kan. 257; Phelps v. Northern Trust Co.,

[1] Reported in 85 N. W. 172.

70 Minn. 546. Actual occupancy is not to be restricted to residence. Tiedeman, Real Prop. § 714; 3 Washburn, Real Prop. 157, 164; Black, Law Dict. 29, 30. Churchill v. Onderdonk, 59 N. Y. 134; People v. State Treasurer, 7 Mich. 365, 369; Fleming v. Maddox, 30 Iowa, 239; Finn v. Wisconsin, 72 Wis. 546, 552; Staininger v. Andrews, 4 Nev. 567, 571; Murphy v. Doyle, 37 Minn. 113; Brown v. Kohout, 61 Minn. 113; Morey v. City of Duluth, 69 Minn. 5; County of Hennepin v. Brotherhood of Church of Gethsemane, 27 Minn. 460; County of Hennepin v. Grace, 27 Minn. 503.

*Francis W. Sullivan,* for respondent.

There is a wide difference between "possession" and "occupancy." Occupancy is that kind of possession which is real, open, visible, immediate, and actual; it is the act of standing on the thing possessed, or having it so exclusively under one's control that there can be no doubt of it; while "possession" is broader and may include weaker and less evident kinds of possession, which are sufficient for certain purposes. Churchill v. Onderdonk, 59 N. Y. 134; 2 Bouvier, Law Dict. 254, 349; Black, Law Dict. 29, 843 (note); Davis v. Baker, 72 Cal. 494, 496; 1 Am. & Eng. Enc. (2d Ed.) 601; Chickering v. White, 42 Minn. 457; Lawson v. Adlard, 46 Minn. 243; Keller v. Carr, 40 Minn. 428.

The legislature intended to make a distinction between "possession" and "actual occupancy." All parts of the section must, if possible, be given effect. If the actual occupation of land is not required, but some form of constructive possession is sufficient to require the service of notice, where shall the line of distinction as to what constitutes possession be drawn? Swain v. Lynd, 74 Minn. 72. Shall it be said that fencing alone is sufficient? Then the acts of cultivation relied upon become absolutely immaterial. But who shall determine whose "actual occupancy" is shown by the fence? Is cultivation material? Then, assume cultivation without fencing. Who shall say whose "actual occupancy" is indicated by the garden truck? The cabbages have heads, but no tongues; and the corn has only ears. Neither can tell who the "actual occupant" is. Furthermore, the fence or garden may indicate something in summer; but are not mort-

gagees entitled to the benefit of the law in the winter time also, when fence and garden may be covered with snow, as in the case at bar? A fence may be built, or a garden planted, by a squatter who abandons it, or by a nonresident owner. How long shall acts constitute continuing "actual occupancy?" The fact that land was cultivated one year raises no presumption that cultivation will continue.

If cultivation and fencing constitute actual occupancy, how much more does the erection of a building on land which is also fenced. Yet, while such a house is uninhabited, we habitually speak of it as "vacant and unoccupied." And such is the rule in the construction of the vacancy clause of an insurance policy. Keith v. Quincy, 10 Allen, 228; American v. Padfield, 78 Ill. 167; Paine v. Agricultural, 5 T. & C. (N. Y.) 619. Can it be said that a lot on which a building stands and which is fenced, but uninhabited, is "actually occupied"? Is the owner, resident or nonresident, entitled to be served with notice? Yet, in such cases there would be more visible proof that it is, or at one time was, actually occupied, than in the case at bar. The owner of a vacant house might maintain trespass, as one in possession, but he was not ratable as an occupier. Queen v. Assessment, 2 Q. B. Div. 581, 588. In a California statute, "actual" added something to the word "settlers." McIntyre v. Sherwood, 82 Cal. 139. "Actual occupancy" means "actual residence." Hunt v. Smith, 9 Kan. 137. The statute contemplates finding some person in possession, on whom service may be made. But one may be in "possession," yet be outside of the county or state. Davis v. Baker, supra. Was this statute intended to apply only to the mortgaged land of residents of the state? The "possessor" might be out of the state, or go out to avoid service, and yet not cease to be in "possession" when the sheriff attempted to serve notice. The "actual occupant" can always be found when wanted.

The time of actual occupancy is also to be considered. The notice must be served "at least four weeks before the time of sale." The notice must be published at least six successive weeks. There is an interval of two weeks only during which service may be made. It is the occupancy during that period

only which is of consequence. No notice can be served until it has been published. If the person in possession sees it, he may easily elude the officer for that short period, or go out of the state, and thus force the mortgagee to begin over, or postpone his sale from time to time. Davis v. Baker, supra.

The intention of the legislature becomes clear from an examination of the different changes that have been made in this statute. R. S. 1851, c. 85, § 4; R. S. 1851, c. 73, § 33; Pub. S. 1858, c. 75, § 4; Pub. S. 1858, c. 63, § 32; G. S. 1866, c. 81, § 5; Laws 1867, c. 74; Laws 1877, c. 121; Laws 1878, c. 53, § 5. In all statutes from 1851 to 1878, the clause to be construed in this case consists only of five words, "if the same are occupied"; while Laws 1878 amended this clause by adding the word "actually," so that the statute has ever since read "if the same are actually occupied." It is inconceivable what more could have been done by the legislature to indicate that it was its intention that the notice should be served, not in the case of construction or technical possession, but only where there was an actual, visible, present, physical holding of the land. Both judicial and legislative construction have united in attaching a definite meaning to "occupancy," "residence," and "removal" as used in the exemption laws. "Occupancy" and "residence" have invariably been construed as meaning an "actual" occupancy of the premises, and an "actual" residence thereon as a home or dwelling place. Quehl v. Peterson, 47 Minn. 13. "Actual occupancy," as distinguished from mere possession (which may be constructive), is the prominent idea associated with the word "homestead." Clark v. Dewey, 71 Minn. 108, 110.

While the point involved has never been decided by this court, it has been decided in a case which undoubtedly has been considered by the bar as expressing the settled law of this state upon the point. Moulton v. Sidle (C. C.) 52 Fed. 616.

COLLINS, J.

The decision of this case depends upon a construction of that part of G. S. 1894, § 6032, reading as follows:

"In all cases, a copy of such notice shall be served in like manner as summons in civil actions in the district court, at least four

weeks before the time of sale, on the person in possession of the mortgaged premises, if the same are actually occupied."

The mortgage in question was foreclosed under a power, but no notice was served upon the mortgagor or any other person; the affidavit filed being to the effect that the premises were at the time of the foreclosure wholly vacant and unoccupied. Whether they were or not is the salient question.

The mortgaged property consisted of four small lots or tracts of ground in the city of Duluth, one hundred by one hundred forty feet in size in the aggregate, equal to two full lots, fronting upon West Second street, which street was wholly unused, and extending back to a public alley twenty feet in width. Northerly and across the alley were two other lots, taken together one hundred by one hundred forty feet, fronting upon West Third street. At the time the mortgage was given, the alley was unopened, and the entire premises were inclosed by a fence as a single tract. The mortgagor resided in a house upon one of the lots facing upon Third street, and in the rear of the other lot, facing upon Third street, was a barn used by him. The property mortgaged was at that time used for a garden by the mortgagor. Subsequently, and before the foreclosure, the alley was opened and graded, and the fence changed so that there were two inclosures, one fronting upon Third street, and one—the mortgaged portion —fronting upon Second street; the fences in the rear of each tract being placed along the lines of the alley. The fence in the rear of the northerly parcel, on which the mortgagor dwelt, was connected with the barn, and at just this point was a small gate opening upon the alley. Almost exactly opposite, across the alley, was another gate, through which one might pass through the fence surrounding the mortgaged land.

As before stated, this particular tract of land was used by the mortgagor for garden purposes when the mortgage was given, and it continued to be so used, in the proper season of each year thereafter, and also subsequent to the foreclosure, which was commenced in January, 1899; the mortgagor continuing to reside in the dwelling house before mentioned until his death, in October, 1899. It stands admitted that the foreclosure proceedings were

valid in all other respects. It is contended by these plaintiffs, who are the heirs at law of the mortgagor, that under the conditions existing at the time of the foreclosure proceedings the statutory notice should have been served upon the mortgagor, as the person in actual occupation of the mortgaged premises. Upon the facts shown, and as we construe the statute, this contention is correct.

It is quite clear that in using the quoted language a distinction was attempted to be made between a person in possession simply, and a person who not only had possession, but was in actual occupancy. In the one case notice was necessary; in the other, it was not. While the power to foreclose is derived from the convention of the parties, the proceedings in the exercise of that power, so far as regulated by statute, are wholly statutory, and in order to constitute a valid foreclosure all of these statutory requirements must be complied with, substantially. The words in question cannot be construed narrowly, so as to defeat the real object intended. The purpose of requiring this notice was to notify the party occupying the premises and presumably interested, that foreclosure proceedings under the power had been instituted, and that a foreclosure was in progress. Its object was to protect a right when foreclosure proceedings were being had by advertisement, and to prevent a wrong which might result if no notice was required to be given to persons not only in possession, but also in actual occupation.

"Actual occupancy" is defined as an open, visible occupancy, as distinguished from the constructive possession which follows the legal title. "Actual possession" has practically the same meaning. It means possession in fact, effected by actual entry upon the premises and actual occupancy. The word "actual" is commonly used in a statute in opposition to "virtual" or "constructive," and calls for an open, visible occupancy. Black, Law Dict. 29, 30. The same definitions are found in 2 Bouvier, Law Dict. 254, 349. But further consideration of the definitions and further analysis of the statute seem unnecessary. The mortgagor resided in a dwelling house situated upon inclosed premises across the alley, within one hundred feet of the land involved. His barn,

in the same inclosure, was just across the alley. Small gates had been placed in the fences, about opposite each other,—very suggestive that both tracts were used and occupied by the same person. The mortgaged tract was inclosed with a substantial fence, and in the growing season was under cultivation as a garden, and by the mortgagor. It is true that the foreclosure was in the winter, with deep snow on the ground. But the fence was then in plain sight, and so were the suggestive gates. From these visible facts a person examining the premises should infer others.

We hold, on the facts as they appear in this case, that the mortgagor was in actual occupation of the premises, within the meaning of the statute, and was entitled to notice of the proceedings under the power.

Order reversed.

BROWN, J. (dissenting).

I dissent. We have no statute in this state requiring the service of notice of mortgage sale by advertisement upon the mortgagor. Such might well be the requirement of the law. It was such by the revision of 1866 (G. S. 1866, c. 81, § 5), but was repealed by Laws 1877, c. 121. The statute of 1866 was practically re-enacted in 1878 (Laws 1878, c. 53), but the provision for service upon the mortgagor was omitted. The statute of 1866 provided for service of such notice upon "the person in possession of the mortgaged premises, if the same are occupied"; but the re-enacted statute—G. S. 1894, § 6032—requires it to be served upon the person in possession of the premises, "if the same are actually occupied." It seems clear to me that this language will bear but one construction, and that to the effect that the service of notice must be upon the person in the actual, open, and physical possession of the mortgaged premises at the time of the foreclosure.

The mortgagor, whose heirs now complain of want of notice to him, was not in such actual or physical possession of the mortgaged premises at the time of this foreclosure. His only possession was of a constructive nature, and based wholly upon the fact that he occupied property separated from the mortgaged premises by an alley or street, and the further fact that he used the mortgaged premises for gardening purposes during the summer season.

The mortgage does not cover the premises on which the mortgagor actually resided at the time of its execution, but was given wholly upon separate lots, as shown in the opinion of the majority of the court, and after the same had been separated from the residence portion of the tract by the plat. The mortgage was foreclosed in the winter season, and the premises at that time had no appearance whatever of being in the actual possession of any person, other than the fact that they were fenced, and the "suggestive gate" referred to by the court. I find no reason for presuming that the mortgagor, who resided upon the tract of land across the alley or street from this tract, alone entered at this "suggestive gate," or that it furnishes the slightest evidence that the premises, which were in fact wholly vacant and unoccupied, were actually occupied and in the possession of the mortgagor, within the meaning of this statute. Moulton v. Sidle (C. C.) 52 Fed. 616.