## HUBBARD et al., Appellants, v. SWOFFORD BROTHERS DRY GOODS COMPANY.

### Division One, February 26, 1908.

1. **DEED: By Agent: Purpose.** A deed "by and between J. W. Summers, as agent for Chester Hubbard and Mary Hubbard, his wife, of the county of Jackson and State of Missouri, of the first part," reciting that "the said party of the first part, for his heirs, executors and administrators, covenant and agree with said party of the second part....In testimony whereof the said J. W. Summers, as agent for Chester Hubbard and Mary Hubbard, his wife, of the first part, has hereunto," etc., and signed by "J. W. Summers, Atty. for Chester Hubbard," not only purports to be the deed of Hubbard and wife, but one would have to yield his common sense interpretation of it to a very narrow technical one to reach the conclusion that it was the personal deed of Summers. Although Hubbard and wife lived in Iowa and Summers in Jackson county, yet as Hubbard had lately prior thereto executed a power of attorney to Summers conferring on him plenary power to sell any and all real estate in Jackson county belonging to Hubbard, and the land belonged to Hubbard, and the grantee accepted the deed as conveying the title to him, its evident intention was to convey Hubbard's title.

2. **————: Seal: No Scroll.** Where no seal appears in the record copy, but the closing clause of the deed declares it is under seal of the grantor and the acknowledgment is that it was duly executed, the law presumes the deed was sealed.

3. **————: ————: By Agent.** Where the deed manifests the maker's intention to act as attorney for his principals in making the deed, and not for himself, the seal attached by him was their seal.

4. **————: Acknowledgment: Before "Mayor of Kansas."** By an acknowledgment in Jackson county before "the mayor of Kansas in said county" is meant an acknowledgment before the mayor of "the City of Kansas," the official name of a city at that time (1856) in Jackson county. No one could be mistaken as to the municipality referred to.

5. ———: ———: **Officer's Seal.** Where the deed recites that it was given under the official seal of the officer taking the acknowledgment, it will be presumed that the omission of the "(L. S.)" in the certified copy was the mistake or oversight of the recorder making the copy.

6. **LIMITATIONS: Adverse Possession: Break in Continuity: Remaindermen.** The property was sold in 1856, and the grantee built a three-story brick house thereon, and inclosed the lot with a close fence, and lived in it until the fall of 1863, and then placed a tenant in it, and sold it in January, 1864, and that grantee testified it was vacant when he bought it. *Held*, that even if the original deed made in 1856 was insufficient to convey title, the continuity of the adverse possession was not broken by the fact that, for a short time, in 1863, less than three months, the property was not occupied, and as the original grantee did not die until 1861, the Statute of Limitations began to run against him in his lifetime, and his remaindermen cannot claim that it did not begin to run against them until the death of their mother, who died in 1899—the original owner leaving a will by which he gave all his property to his wife for life, remander to his children, the plaintiffs.

Appeal from Cass Circuit Court.—*Hon. W. L. Jarrott,*
Judge.

Affirmed.

*English & English* for appellants.

(1) The deed should not have been admitted in evidence at all. It was a copy of the record. The proof of the inability to produce the original was insufficient. The record constituted no evidence because the acknowledgment was not authenticated under the seal of the City of Kansas. Laws 1853, Approved Feb. 22, 1853, sec. 6, art. 3. (2) The deed was ineffective because it did not purport to be Hubbard's deed at all and did not purport to be sealed with Hubbard's seal. The deed would be wholly void at common law as Hubbard's deed. Story on Agency, 147; 2 Kent, 631. The statute authorizing the use of a scroll as a seal (R. S. 1889, sec. 2388), which had been in force long before

the deed in question was dated, recognized the fact that
private parties usually used the scroll, and required
the instrument, when the scroll was used, to recite that
it was under seal.  When this recital is made, it will be
presumed that the original was sealed even though the
copy shows no seal.  In this case the record shows no
seal.  The instrument recites that Summers' seal was
affixed, but it contains no recital that Hubbard's seal
was affixed nor does the copy purport to show Hub-
bard's seal.  Jones, Real Prop. in Conv., sec. 1075;
Fowler v. Shearer, 7 Mass. 14; Elwell v. Shaw, 16 Mass.
42; Clark v. Courtney, 5 Pet. 319.

*Elijah Robinson* and *Ellis, Cook & Ellis* for re-
spondent.

(1) The failure of the mayor of Kansas City to in-
sert in his certificate of acknowledgment the words
"the City of" before the word "Kansas," was a mere
clerical omission.  This is made perfectly clear by the
other recitals in the certificate.  The certificate recites
that it was given under the mayor's hand and official
seal, and the presumption is that the official seal was
affixed, although the (L. S.) does not appear on the
certified copy of the deed.  Jones on Real Property,
sec. 1075; 25 Am. and Eng. Ency. Law, 78; Hammond
v. Gordon, 93 Mo. 223; McCoy v. Cassidy, 96 Mo. 429;
Macey v. Stark, 116 Mo. 481; Mitchner v. Holmes, 117
Mo. 185.  (2) This deed having been of record since
1856, the certified copy thereof was admissible in evi-
dence, regardless of the question as to whether the cer-
tificate of acknowledgment was defective.  R. S. 1899,
sec. 3119; Wilson v. Albert, 89 Mo. 537; Brown v. Old-
ham, 123 Mo. 621.  (3) There can be no question but
that it was the intention of Summers, in executing this
deed, to act for Hubbard, and not for himself.  He in-
tended to convey Hubbard's title, as he was authorized

to do by Hubbard's power of attorney to him, and not any title of his own. Hunter v. Miller, 6 B. Mon. 612; Webb v. Burke, 5 B. Mon. 54; Carter v. Doe, 21 Ala. 72; Magill v. Hinsdale, 6 Conn. 464; Distilling Co. v. Brant, 69 Ill. 658; Shanks v. Lancaster, 5 Gratt. 110; Martin v. Almond, 25 Mo. 313; Owen v. Switzer, 51 Mo. 322; Pease v. Iron Co., 49 Mo. 124; Turner v. Timberlake, 53 Mo. 371; Whitehead v. Reddick, 12 Ired. (N. C.) 95; Butterfield v. Beall, 3 Ind. 203. (4) The deed recited that it was executed under seal, and it will be presumed that the seal was affixed, notwithstanding no (L. S.) appeared on the certified copy of the deed. Jones on Real Property, sec. 1075; 25 Am. and Eng. Ency. Law, 28; Hammond v. Gordon, 93 Mo. 223; McCoy v. Cassidy, 96 Mo. 429; Macey v. Stark, 116 Mo. 481; Mitchner v. Holmes, 117 Mo. 185. (5) Plaintiff's action is barred by the ten-year Statute of Limitations. (a) The statute began to run in Hubbard's lifetime (when Trefren enclosed the lot and built the dwelling and outhouses thereon) and was not suspended by any disability on the part of his heirs or devisees. Rogers v. Brown, 61 Mo. 187; Cunningham v. Snow, 82 Mo. 587; Pin v. St. Louis, 122 Mo. 665. (b) A temporary vacancy of the dwelling house did not constitute a break in the continuity of the adverse possession. Crispen v. Hannavan, 50 Mo. 549; Fugate v. Pierce, 49 Mo. 441; Stettnische v. Lamb, 18 Neb. 617; Hughes v. Pickering, 35 Miss. 506; Hudgins v. Crow, 32 Ga. 367; Downing v. Mayes, 153 Ill. 330; De La Vega v. Butler, 47 Tex. 529; Patchin v. Stroud, 28 Vt. 394; Hunter v. Pinnell, 193 Mo. 142. (6) Even a verbal contract of sale of lands, the purchase money being paid and possession being taken by purchaser and representation of such sale made by the seller to a subsequent buyer, gives the latter good title enforceable in equity. Rice v. Bunce, 49 Mo. 231; Guffey v. O'Reilly, 88 Mo. 418; Raley v. Williams, 73 Mo. 310. (7) Hubbard's repre-

sentations to H. H. King that he, Hubbard, had sold this lot to Wheeler, are presumed to have been relied upon by King as incident to King's purchase of the property. 2 Pom. Eq., sec. 895, p. 382; Kerr, Fraud and Mistake, 75; 1 Benj., Sales (Corbin's Ed.), p. 556 and note; Redgrave v. Hurd, L. R. 20 Ch. Div. 24; Fishback v. Miller, 15 Nev. 443; McClellan v. Scott, 24 Wis. 87.

*English & English* for appellants in reply.

The law required the deed to be under the seal of the grantor. The deed introduced does not purport to be under Hubbard's seal, nor does the certified copy of the record recite that it was under his seal. The only recital of the record is that it was under Summers' seal. Since it did not purport to be under Hubbard's seal, the deed could not be read in evidence. Walker v. Kirk, 8 Mo. 301; McCoy v. Cassidy, 96 Mo. 429; Macey v. Stark, 116 Mo. 481.

VALLIANT, P. J.—Plaintiffs sue in ejectment for the possession of certain real estate in Kansas City. The trial resulted in a verdict for the plaintiffs which the court on defendant's motion set aside, and granted a new trial. From that order the plaintiffs have appealed.

Chester Hubbard, the father of the plaintiffs, was the common source of title. He lived in Kansas City from 1853 to 1857 when he moved to Iowa. While he lived in Kansas City he owned certain land in that city which he platted into city blocks and lots called Hubbard's Addition. The lot in controversy in this suit was in that addition. He died in 1861 in Iowa, leaving a will by which he devised all his estate, real and personal (without specifying any particular property), to his wife for life, remainder to his children. The widow died in 1899. The plaintiffs in this suit are the children

of the testator and claim this land as remaindermen under that will.

The defendant claims title as follows:

September 16, 1856, Chester Hubbard and his wife executed a power of attorney to John W. Summers who, the evidence shows, was a justice of the peace in Kansas City, conferring on him plenary power to sell any or all real estate belonging to them in Jackson county. That document was duly acknowledged and was recorded October 16, 1856.

December 2, 1856, Summers executed a deed conveying the lot in suit to George B. Wheeler for $225 in cash. The main controversy in this suit turns on the effect of that deed. It is as follows:

"This indenture, made and entered into this second day of December, in the year of our Lord one thousand eight hundred and fifty-six, by and between J. W. Summers, as agent for Chester Hubbard and Mary Hubbard, his wife, of the county of Jackson, and State of Missouri, of the first part, and George B. Wheeler of the county and State aforesaid, of the second part.

"Witnesseth: That the said party of the first part for and in consideration of the sum of two hundred and twenty-five dollars to me in hand paid, the receipt whereof is hereby acknowledged, have given, granted, bargained and sold, and by these presents do give, grant, bargain and sell, alien, convey and confirm unto the said party of the second part, and to his heirs and assigns forever, a certain tract or parcel of land, lying and being in the county of Jackson, and State aforesaid; namely, a certain lot, piece or parcel of ground known in said Hubbard's Addition to the City of Kansas, as lot number twenty-seven (27), in block number six (6), said lot being sixty feet on Mary street and one hundred and forty-two feet from said Mary street to an alley, and being sixty feet on said alley.

"To have and to hold the said tract, piece or parcel

of land with all the appurtenances thereto belonging or in any wise appertaining to the only proper use, benefit and behoof of him, the said party of the second part, and to his heirs and assigns forever; and the said party of the first part, for his heirs, executors and administrators, covenant and agree to and with said party of the second part, his heirs and assigns, the said tract, piece or parcel of land and bargained premises and every part and parcel thereof, unto him, the said party of the second part, and his heirs and assigns, against all manner of claims they will warrant and forever defend the same by these presents.

"In testimony whereof the said J. W. Summers, as agent for Chester Hubbard and Mary Hubbard, his wife, of the first part, has hereunto set his hand and seal this day and year above written.

" J. W. SUMMERS,

"Atty. for Chester Hubbard."

Plaintiffs urge several objections to this deed, the first of which is that it does not purport to be the deed of Hubbard and wife but the personal deed of Summers.

One would have to yield his common sense interpretation of this deed to a very narrow technical interpretation of it in order to reach the conclusion that it was intended otherwise than as the deed of Hubbard and wife by their attorney in fact. When it was offered in evidence one of the objections interposed was that it was the deed of Summers and not that of Hubbard and wife and it was said that the words "agent and attorney for Chester Hubbard and Mary Hubbard, his wife," were "merely descriptive" of Summers. Words of description are sometimes used to identify a person whose mere name in the connection used might be mistaken to refer to some other person of the same name, as, for example, Charles Carroll of Carrollton, but can any such purpose be imagined in this instance?

Besides, Summers was conveying land that it is admitted belonged to Hubbard. As agent of Hubbard he was selling Hubbard's land. How did Summers understand his act, how did Wheeler understand it, how would any man of common sense, learned or unlearned, understand it? Summers was endeavoring, as agent for Hubbard, to convey to Wheeler Hubbard's land; that was the purpose they both had in view and the executing of the deed by the one and the accepting of it by the other shows that they both understood that it accomplished that purpose. We must construe the deed according to the evident intention and so construing it we hold that it is a deed from Hubbard and wife to Wheeler. [Martin v. Almond, 25 Mo. 313; Pease v. Iron Co., 49 Mo. 124; Owen v. Switzer, 51 Mo. 322; Turner v. Timberlake, 53 Mo. 371; McClure v. Herring, 70 Mo. 18.]

This deed was recorded December 24, 1856. The evidence of it was a certified copy, the defendant having first made proof that the original was not in its power. Plaintiffs now offer the further objection that the deed is not sealed with Hubbard's seal. No seal appears in the copy, although in the closing clause of the deed it declares that it is under the seal of the grantor as he is therein described, and the acknowledgment is that it was duly executed. Under those conditions the law presumes that the deed was sealed. [Hammond v. Gordon, 93 Mo. 223; McCoy v. Cassidy, 96 Mo. 429; Macey v. Stark, 116 Mo. 481; Mitchner v. Holmes, 117 Mo. 185.]

But appellant insists that it is not sufficient even if it appeared that Summers had attached his seal, because the deed to be effectual should carry the impress of Hubbard's seal. That brings us back to the question of whose deed this was. It was inartificially drawn but, as we have seen, Summers was not purporting to act in his individual capacity, it was only in the

capacity of agent for his principals and all that he did was intended to be the act of his principals; under the power of attorney he had authority to attach their seals to the deed and when, not as himself, but as agent for them, he attached a seal while proclaiming he was acting for them it was their seal.

This deed, in connection with that power of attorney, might be viewed from another standpoint and it would be equally effective to carry the title to the land, that is, viewing Summers as the donee of a power to sell and execute a deed of conveyance, if he had made the deed referring to the power and indicating that as in execution of it the deed was made in his own name as grantor it would have been a valid execution of the power. But we are rather inclined to the opinion that Summers was intending to act simply as agent and that his hand that signed and sealed the deed was the hand not of Mr. Summers but the hand of Hubbard's agent and therefore Hubbard's hand.

It is further objected that the certified copy shows that the acknowledgment was before the mayor of "Kansas in the county aforesaid" whereas it is said there was no city named "Kansas" in that county. We know, however, that there was at that time in Jackson county a city whose official name was "The City of Kansas," and no one not desiring to be mistaken could be mistaken in the municipality referred to.

Lastly, it is objected that the certified copy does not indicate that the.seal of the City of Kansas was attached to the mayor's certificate of acknowledgment. The acknowledgment concludes with: "Given under my hand and official seal the date above written. M. J. PAYNE, Mayor."

Since the deed recites that it bears the mayor's official seal it will be presumed that the omission of the (L. S.) in the certified copy was the mistake or oversight of the recorder making the copy.

We hold that this instrument was valid as the deed of Chester Hubbard and passed his title to the grantee Wheeler therein named.

Following this deed defendant produced in evidence a succession of deeds making a regular chain bringing the Wheeler title down to the defendant.

As what is above said disposes of the plaintiffs' claim, it is perhaps unnecessary to follow the defendant's evidence any farther, but as the cause is to be re-tried we will consider the other questions.

The evidence showed that when Wheeler bought the lot it was vacant; he sold to one Bailey in 1857, and Bailey sold to one Trefren in 1859. When Trefren bought it he built a three-story brick residence on it and enclosed it with a fence and lived there with his family until the fall of 1863 when he moved to St. Louis. When he went to St. Louis he rented the premises to one Sears, who occupied it as tenant of Trefren, just how long the evidence does not show. The title passed through mesne conveyances from Trefren to one King in January, 1864; thence by successive conveyances down to the defendant. Mention is here made of the conveyance to King because he in his testimony stated that the house was not occupied at the time he bought it, but that he put a man in it and it was not vacant again while he owned it. That testimony is relied on by plaintiffs to show that the adverse possession which began in 1859 was not continuous. Whilst the time during which the house was not occupied is not definitely stated, yet sufficient is stated to show that it was not a long period. Trefren who built the house lived in it until the fall of 1863, when he left he rented it to Sears who occupied it as his tenant, and King bought it in January, 1864. So that at the most there was a space of only about three months between the time Trefren moved to St. Louis and the time King purchased, and within that time Sears occupied the house, just how

long is not shown. And even during that period, as the evidence shows, there was a close fence around the premises, and doubtless the house was closed and locked, although that was not shown. Except for that brief period the testimony showed that the property had been in the open, continuous and adverse possession of the persons under whom the defendant claims from 1859 to the date of the trial.

As Hubbard did not die until 1861 this possession began in his lifetime, therefore the Statute of Limitations began to run then, and did not cease to run because of his death. If the possession had not begun until after the death of Hubbard then the Statute of Limitations would not have begun to run against the plaintiffs, who claim as remaindermen, until the falling in of the life estate in 1899, but having begun in his lifetime it ran on against his heirs and devisees. That the house was unoccupied for a short while did not break the continuity of the adverse possession. See the cases cited on this point in respondent's brief.

The defendant's evidence made out a clear title by adverse possession.

There is one other point in defendant's case which we will notice, though perhaps it is unnecessary.

Mr. King testified that he bought from Hubbard the other lots in Hubbard's Addition and while he was negotiating for them Hubbard told him that he had sold this lot to Wheeler. Defendant contends that, because King afterwards bought the lot from one deriving title from Wheeler, Hubbard's devisees are estopped from denying the Wheeler title.

Assuming that what Hubbard said to King on that occasion would have the effect to estop the plaintiffs from disputing the title of Wheeler, there may be some question as to whether King was a competent witness to prove the fact. Suppose King was still holding the Wheeler title he acquired and was in possession of the

property under it, would he in his own behalf against the heirs or devisees of Hubbard be a competent witness under section 4652, Revised Statutes 1899, to prove a conversation between himself and the man who has since died that would in effect defeat a title that it is claimed the man now dead owned at the date of his death, or prevent its passing to his heirs or devisees, and if he could not in his own behalf could he ''in favor of any party to the action claiming under him?''

We will not enter upon an investigation of that question because it was not raised in the trial court and has not been referred to in the briefs on either side; therefore, it is not necessary to decide it. We mention it, however, because we consider it a question not free from difficulty.

The trial court was right in setting aside the verdict for the plaintiff and granting a new trial.

The judgment is affirmed.

All concur.