## CARL W. NYGREN v. FLOYD J. PATRIN AND ANOTHER.

179 N. W. (2d) 76.

July 17, 1970—No. 41921.

*Linn Slattengren,* for appellant.
*Howard Moore* and *Maloney, Carroll & Olson,* for respondents.

Heard before Knutson, C. J., and Nelson, Otis, Rogosheske, and James F. Murphy, JJ.

NELSON, JUSTICE.

This is an appeal from a judgment in an action to quiet a tax title. Plaintiff, holder of the tax title, contends that defendants are barred from asserting any defense to the quiet-title action by virtue of the 1-year statutory limitation of Minn. St. 284.09. Plaintiff further contends that personal service of a notice of expiration of redemption, mandatory by Minn. St. 281.23, subd. 5, was not required when the evidence disclosed that the premises were not actually occupied on the date the sheriff attempted service.

From the record it appears that defendants, Floyd J. Patrin and Elsie C. Patrin, were record holders of Lots 4 and 5 in Block 9 of the village of Taylors Falls, Chisago County, Minnesota, having acquired their interest sometime prior to actual execution and filing of the deed on December 29 and 30, 1959, respectively. However, for purposes of this action, it is sufficient to say that defendants failed to pay taxes for 1959 and all ensuing years.

Accordingly, on April 13, 1961, a real estate tax judgment was entered in a proceeding to enforce payment of taxes delinquent in 1959. On May 8, 1961, pursuant to judgment a sale was held in the office of the county auditor and the state purchased the land. A notice of expiration of redemption was published on July 1, 8, and 15, 1966. On July 30, 1966, the sheriff attempted to personally serve a notice of expiration of redemption on defendants but found the premises unoccupied. On October 5, 1966, the county auditor filed a certificate of forfeiture. The property was subsequently conveyed to plaintiff, Carl W. Nygren, by state tax deed dated December 23, 1966, and filed December 28, 1966.

On March 15, 1968, plaintiff brought this action to quiet title and, in an answer filed April 2, 1968, defendants alleged that the redemption period had not expired since no personal service of the notice of expiration of redemption was ever made on them. The trial court found that defendants actually occupied the premises in 1966 and 1967. It concluded:

"That M.S.A. 281.23 Subdivision 5 requires service of Notice of Expiration of Redemption upon the person in possession of each parcel found to be so occupied in the manner prescribed for serving Summons in a legal action. This requirement was not complied with and the forfeiture was invalid.

"That Defendants, Floyd J. Patrin and Elsie C. Patrin, the owners of said premises, were entitled to assert their claim against Plaintiff's tax title pursuant to M.S.A. 284.09 Subdivision 4 which suspends the one year limitation in cases where the land at and ever since the time of forfeiture has been in the actual, open, continuous and exclusive possession of the owner at the time of forfeiture."

The evidence of possession by defendants is conflicting. It is undisputed that they maintained a residence in St. Paul and utilized the Taylors Falls property primarily on weekends. It is likewise uncontroverted that defendants spent about 5 months each year since 1952, from July or August until December or

January, in Idaho. What is very much in dispute is the frequency of their visits to the property and the care they gave the land and premises; whether the premises were occupied on July 30, 1966; and the continuity and exclusivity of their possession subsequent to issuance of the certificate of forfeiture.

Four members of the Patrin family, including defendants, testified that the property was visited practically every other weekend. This statement was qualified somewhat by Mrs. Patrin who stated that her days off did not necessarily coincide with weekends. The property included a two-story house which, undisputably, was in a state of disrepair. Electricity had been terminated some 2, 3, or possibly 4 years before the date of trial due to defendants' concern over the state of the outside wiring. Various windows had been broken over the years; the outside finish of the house was peeling; the lawn was overgrown with wild grass and brush; and the porch had been removed to remodel the front of the house and had not been replaced.

Mrs. Patrin testified that in 1966—

"* * * there was three beds, a baby bed, refrigerator, chairs, tables, stove and sink, dishes, and groceries, like dry groceries. Flour, salt, pepper and sugar, that was always there. If we'd want to go out there anytime to fix a meal and so on, we'd always have groceries there, dry cereal and dry milk and so on."

She stated that the premises were occupied on July 30, 1966:

"A.  Mr. Patrin and Bryan and the grandchildren went out in the earlier part of the year, and I went out on, oh, about the 5th of August or the 4th of August, somewhere around the first part of August.

"Q.  Can you recall, Mrs. Patrin, the last time before you went to Idaho that you were on the property we're discussing here in Taylors Falls?

"A.  I was last—1967, I was there.

* * * * *

"A.  Yes, I was out there the last part. I was there practi-

cally almost all week because it was my birthday, which is the 30th of July, and I'd been visiting the neighbors, and I also went and seen my mother-in-law at the Amery Rest Home, and, then, I went and visited my sister-in-law in Wisconsin, and then, I'd stay there at night, and I spent about, oh, a week there continuously, maybe a little longer."

She added that she continued to make periodic trips to the property in 1967. She testified to a confrontation with plaintiff in July 1967, at which time he told her to leave, but she refused.

Defendant Floyd Patrin testified that he stored various items of property on the premises, including earth-moving machinery. He was informed by plaintiff of the tax sale in January 1967. During the same month he observed that a "no trespassing" sign had been posted. He offered to reimburse plaintiff for the money he had advanced and for "his problems and his troubles" in connection with the acquisition of the certificate of sale. "* * * I also told him I was more or less under the impression that being that he had paid up the taxes and that he'd more or less did it as a friend, as a good neighbor, until I found out later he didn't." A neighbor testified that she had observed Mrs. Patrin cleaning the premises and that the visits made by defendants to the premises would be of 1 to 3 days' duration.

Plaintiff called witnesses who testified in effect that the property looked as if it had been abandoned and that defendants were seldom seen there.

■ We are satisfied from an examination of the record that there was sufficient evidence from which the trial court could find that there was no service of notice of expiration of redemption upon defendants.[1] It is well settled that the statutory re-

---

[1] Minn. St. 281.23, subd. 5, so far as relevant, provides: "Forthwith after the commmencement of such publication the county auditor shall deliver to the sheriff of the county a sufficient number of copies of such published notice for service upon the persons in possession of all parcels of such land as are actually occupied, together with a copy of the posted notice or notices referred to in such published notice. Within

quirement with reference to the service of notice of expiration of redemption is of great importance and that strict compliance therewith is required. McHardy v. State, 215 Minn. 132, 9 N. W. (2d) 427. Accordingly, a failure to comply with the statute will invalidate the forfeiture proceedings.

The issues as to whether the land is "actually occupied" and who are persons in possession who must be served with the statutory notice of expiration of redemption of tax sale are primarily questions of fact, and where there is evidence to sustain the trial court's findings, they must be affirmed. McHardy v. State, *supra*.

The issue seriously contested is whether the trial court erred in finding that the 1-year statute of limitations to contest a tax forfeiture had been tolled by the actual, open, continuous, and exclusive possession of the premises by defendants at and ever since the forfeiture.[2] Plaintiff contends, on the basis of the rec-

---

30 days after receipt thereof, the sheriff shall make such investigation as may be necessary to ascertain whether the parcels covered by such notice are actually occupied or not, and shall serve a copy of such published notice upon the person in possession of each parcel found to be so occupied, in the manner prescribed for serving summons in a civil action."

[2] Minn. St. 284.09, which permits an adverse claimant to assert a defense to the tax forfeiture proceeding providing he has the requisite possession, so far as relevant, states: "Except as otherwise herein provided, no cause of action or defense shall be asserted or maintained upon any claim adverse to the state, or its successor in interest, respecting any lands claimed to have been forfeited to the state for taxes, unless such cause of action or defense is asserted in an action commenced within one year after the filing of the county auditor's certificate of forfeiture * * *. The limitations hereof shall apply to all cases where land is claimed to have been forfeited to the state for taxes, except as follows:

\* \* \* \* \*

"(4) Cases where the land at and ever since the time of forfeiture has been in the actual, open, continuous, and exclusive possession of the owner at the time of forfeiture, or his successors in interest, claiming

ord, that the house and two lots involved were uninhabited and abandoned and that there could be no possession within the meaning of Minn. St. 284.09(4) because defendants were absent from the state from October 1966 to January 1967, and that their possession was at best intermittent. There is evidence, however, that defendants and their two sons occupied the premises during 1966, 1967, and 1968, and that the house contained furniture, food, and other personal items for the use and convenience of defendants and members of their family. It further appears that defendants did some minimal maintenance, including repair of broken windows, during that period. It was said in McHardy v. State, *supra*, and Absetz v. McClellan, 207 Minn. 202, 290 N. W. 298, that the possession which will toll the statute must be substantial and suited to the appropriate use of the property. In Murphy v. Doyle, 37 Minn. 113, 33 N. W. 220, we observed that what will constitute actual adverse occupancy varies, depending upon the circumstances, and what circumstances will constitute such occupancy will depend somewhat upon the nature and situation of the property and the use to which it can be applied.

Here the purpose and use for which defendants originally acquired, and later held, the property should be considered. Although they had a home in St. Paul, it would appear that they intended to use the property in question as a second home, or country place, which they might use as a weekend retreat or for hunting and fishing accommodations for themselves and members of their family.

The claim of plaintiff that there could be no continuous occupancy because defendants were in the State of Idaho for about 4 months may be disposed of by Kelley v. Green, 142 Minn. 82, 85, 170 N. W. 922, 923, where it was said:

adversely to the state or its successor in interest, in which case the running of the period of limitations hereunder shall be suspended as to such owner, or his successor in interest, during the time of such possession, but no longer."

"Her temporary absence for three months on a trip to California did not break the continuity of her possession. Hubbard v. Swofford Bros. Dry Goods Co. 209 Mo. 495, 108 S. W. 15, 123 Am. St. 488; Montgomery & M. Co. v. Quimby, 164 Cal. 250, 128 Pac. 402."

In Fredericksen v. Henke, 167 Minn. 356, 359, 209 N. W. 257, 258, 46 A. L. R. 785, 787, it was said:

"* * * To constitute adverse possession it is not essential that the adverse possessor actually live upon the land which he claims. It is enough that it is occupied and applied to the uses for which it is fit."

In this case the court was essentially presented with fact issues and his findings thereon are sustained by the record.

Affirmed.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.