Howard W. **PIPKORN**, Appellant,

v.

Evelyn A. **DUNN**, et al., Respondents.

No. C4–87–123.

Court of Appeals of Minnesota.

July 14, 1987.

Review Denied Sept. 30, 1987.

Steven D. DeRuyter, Lawrence J. Field, Leonard, Street and Deinard, Minneapolis, for appellant.

Joel C. Hessen, David A. Price, P.A., New Brighton, for respondents.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and NIERENGARTEN, JJ.

## OPINION

SEDGWICK, Judge.

Howard Pipkorn brought this quiet title action to set aside the tax forfeiture sale of his lot to Evelyn Dunn. He alleges he was entitled to personal service of notice of the expiration of time for redemption under Minn.Stat. § 281.23, subd. 6 (1982). Pipkorn appeals from the judgment for Dunn. We reverse.

## FACTS

In June, 1976, Pipkorn bought by contract for deed a lakeshore lot in the City of Arden Hills ("Lot A" or "the Lot"). He resides on the adjacent lot to the east. The lots border Lake Johanna on the south and a street on the north.

Although Pipkorn obtained a warranty deed to Lot A in June, 1978, the deed was never recorded. Pipkorn apparently never received tax statements as a result, and he did not pay property taxes on Lot A after paying off the contract for deed in 1978. On May 14, 1979, the State bid in Lot A at a tax forfeiture sale.

A person claiming an interest in land bid in at a tax sale may redeem the property according to the provisions of Minn.Stat. §§ 281.01–.40 (1982). Section 281.23 provides the method by which the county auditor must give notice of expiration of the

time for redemption. It requires posted and published notice, both of which were provided here.

It also requires the county sheriff to give personal service to "persons in possession" of parcels of land that are "actually occupied." Minn.Stat. § 281.23, subd. 5 (1982). Accordingly, on May 5, 1982, deputy sheriff Frank Brown attempted to serve the person in possession of Lot A. After looking over the Lot, Brown knocked on the door of Pipkorn's house and on the door of the house west of Lot A. When no one answered, he left.

On May 10, 1982, deputy sheriff Delroy Hawkins, Brown's partner, also attempted to serve the person in possession of Lot A. He knocked on the backdoor of Pipkorn's house and received no reply. After checking the Lot, Hawkins concluded that no one was using the property.

On May 11, 1982, Brown executed a "Return of Sheriff, Land Vacant" form, as required by § 281.23, subd. 6. The form states:

> I made such investigation as was necessary to ascertain whether the parcel of land * * * was actually occupied, and found the parcel * * * vacant and unoccupied.

Ramsey County then mailed the notice of expiration to the record owner of Lot A (the seller under the contract for deed). On August 16, 1982, the county auditor certified that the time for redemption of Lot A had expired. Dunn bought Lot A from the State at a tax forfeiture sale in July, 1983. When Pipkorn learned that Dunn had bought the Lot he brought this suit to have the sale declared void on the ground he was entitled to personal service under § 281.23, subd. 5. Dunn counterclaimed to have title quieted in her favor.

At trial, Pipkorn testified as follows: He bought Lot A to use as a backyard. Since he is in the business of manufacturing boats, he used the Lot to launch boats into the lake for testing. Soon after buying Lot A he landscaped it and built a boat-launching ramp, consisting of concrete grass paver blocks installed in the ground. The blocks have spaces in them so that grass can grow through. He used the launch ramp around 500 times between 1977 and May, 1982, his employees used it hundreds of times, and neighbors and friends used it once or twice a year.

Pipkorn also testified that during the non-summer months he would store on Lot A "dock sections, * * * boat lifts, a rowboat, a sailboat, piled grass pavers, and other miscellaneous things," and that these items were on Lot A in May, 1982.

Several employees and neighbors corroborated Pipkorn's testimony about his installing the launch ramp and using it to launch boats for testing, and that boats, boatlifts and a pile of grass paver blocks were on the lot in May, 1982. On cross-examination, the witnesses testified they did not know whether the personal property or equipment was there specifically on May 5 or 10, 1982.

Deputy sheriff Brown testified that when he attempted personal service he did not walk onto Lot A, but that he looked around the Lot for "a couple of minutes" from the sidewalk. He testified that it did not look like it was occupied by anyone: he saw no personal property on it, there was no fence around it, and the weeds had not been cut. He did not remember seeing the boat launch.

Deputy sheriff Hawkins testified that when he attempted personal service he walked across Lot A to within a few feet of the lake. It appeared that no one was maintaining or using the Lot, and he did not see any boats, dock sections or boat lifts on it.

The trial court found that the statutory requirements for service of notice of expiration were met because Lot A had been "vacant and unoccupied," and it held that Dunn had exclusive title to the property. Pipkorn appeals.

### ISSUE

Did the trial court err in finding that Lot A had not been "actually occupied" by appellant under Minn.Stat. § 281.23, subd. 5?

## ANALYSIS

Minn.Stat. § 281.23, subd. 5 (1982) provides:

[T]he sheriff shall make such investigation as may be necessary to ascertain whether the parcels * * * are actually occupied or not, and shall serve a copy of such published notice upon the person in possession of each parcel found to be so occupied * * *.

■ The purpose of requiring personal service upon parties in possession is "to employ the type of service most likely to give an owner notice of proceedings in which his title * * * is placed in jeopardy." *Weathers v. Anderson,* 290 Minn. 225, 234, 189 N.W.2d 398, 404 (1971). The statutory requirement is of great importance and strict compliance is required. *Nygren v. Patrin,* 288 Minn. 54, 58–59, 179 N.W.2d 76, 79 (1970); *see also In re Application of Thielke,* 374 N.W.2d 184, 187 (Minn.Ct.App. 1985). Failure to comply invalidates the forfeiture proceeding. *Nygren,* 288 Minn. at 59, 179 N.W.2d at 79.

Whether land is "actually occupied" is primarily a question of fact. *Id.* "Actual occupancy" has been defined as

an open, visible occupancy, as distinguished from the constructive possession which follows the legal title. * * * The word "actual" is commonly used in a statute in opposition to "virtual" or "constructive," and calls for an open, visible occupancy.

*Cutting v. Patterson,* 82 Minn. 375, 380, 85 N.W. 172, 173 (1901); *see also Wallace v. Sache,* 106 Minn. 123, 124, 118 N.W. 360, 361 (1908).

Pipkorn argues that based on the trial court's amended findings he actually occupied Lot A in May, 1982, as a matter of law. We agree.

The trial court found

[t]hat soon after purchase of Lot A [Pipkorn] constructed a driveway made from concrete blocks leading from the lake towards the road. [Pipkorn's] purpose was to provide a boat-launching ramp. The boat-launching ramp was used occasionally by [him] and his employees and several of his friends. Said area became overgrown by grass as was intended by such blocks, and by 1982 the area *appeared to be a driveway* of some sorts but not used very much.

\* \* \* \* \* \*

That after [Pipkorn] purchased Lot A he maintained said lot in a shoddily condition with no apparent improvements except the brick driveway.

(Emphasis added.)

In *Cutting,* the appellant owned a fenced-in lot which he used as a garden. He resided on another fenced-in lot which was separated from the garden lot by an alley. There were gates in the fences directly opposite each other. The supreme court held that the appellant "actually occupied" the garden lot because it

was inclosed with a substantial fence, and in the growing season was under cultivation as a garden * * *. It is true that the foreclosure was in the winter, with deep snow on the ground. But the fence was then in plain sight, and so were the suggestive gates. From these visible facts a person examining the premises should infer others.

82 Minn. at 381, 85 N.W. at 173.

In *Wallace,* the supreme court affirmed a finding of "actual possession" of farmland based on this finding:

Some time prior to October 14, 1904, "the crop of potatoes had been harvested and removed * * *. On that date there was no inclosure of any sort around said lot, * * * either by a fence or otherwise; but on said date there was plainly visible ridges of earth on said lot from which the potatoes had been dug, and old potato tops and some small potatoes were then lying upon the surface of the ground. That upon the surface of said lot were then more or less weeds and grass, which had grown up upon the same between the potato hills during the season said crop of potatoes had been grown and harvested by the plaintiff * * *."

106 Minn. at 124, 118 N.W. at 360–61.

The supreme court explained:

The actual fencing and inclosing of a tract are not necessary * * *. Ordinary use and the taking of the ordinary profits of the land will suffice. · * * * The improvement was notice of possession. 106 Minn. at 124–25, 118 N.W. at 361.

In *Nygren*, the supreme court affirmed a finding of actual occupancy where the property contained a dilapidated house used primarily on weekends as a "country place," stating that the "purpose and use" of the property should be considered. 288 Minn. at 60, 179 N.W.2d at 80. In *Weathers*, the supreme court held that personal service was required because the improvements "gave far greater notice of possession to anyone attempting to serve notice" than did the improvements in *Nygren*. 290 Minn. at 234, 189 N.W.2d at 403.

■■■ A fair reading of those cases is that where there are visible improvements on the land, there is sufficient notice of actual possession to require personal service. Here, the trial court found that Pipkorn built and used the boat-launching ramp and "it appeared to be a driveway of some sorts." This constitutes actual possession under § 281.23, subd. 5.

We reject Dunn's argument that this case is distinguishable from the cases cited above because they involved improvements more substantial than the improvement here. *Wallace* makes clear that it is sufficient if there are visible improvements constituting ordinary use of the property. Using the lakefront lot for launching boats is an ordinary use, and the boat-launching ramp was, in the words of the trial court, an "apparent improvement."

## DECISION

The trial court's findings as to appellant's use and improvement of Lot A establish that he actually occupied the Lot as a matter of law and was therefore entitled to personal service of notice of expiration under Minn.Stat. § 281.23, subd. 5.

Reversed.