150 A.2d 329 (1959)
Halsted P. LAYTON and Jennie H. J. Layton, Plaintiffs,
v.
George Robert PITTARD, Defendant.
Court of Chancery of Delaware, Sussex.
April 8, 1959.
Houston Wilson and W. Howard Thompson, Georgetown, for plaintiffs.
Daniel J. Layton, Jr., Georgetown, for defendant.
SEITZ, Chancellor.
Plaintiffs instituted this action on March 4, 1953. The delay in bringing this matter *330 to trial must be attributed to counsel. Since about 1921 plaintiffs have been record title holders to some 451 acres of beach and marsh land lying between Delaware Bay to the east and Prime Hook, Deep Hole and Back Bay Creeks to the west. The area is generally known as Broadkill Beach in Sussex County. By this action they assert that the defendant is a trespasser who is claiming title by adverse possession to an interior piece of land fronting 118 feet on the bay and having a depth of 165 feet ("disputed parcel").
Plaintiffs seek a declaratory judgment of their ownership and possession of the disputed parcel of land; a declaratory judgment as to the public road-status of a certain 12' driveway which traverses the disputed parcel. Plaintiffs also seek ancillary and other relief which will be mentioned hereafter.
We are primarily concerned with the plaintiffs' claim and the defendants' counterclaim as to the ownership of the disputed parcel. I first address myself to that issue. I should also add that I shall refer only to plaintiff, Halsted Layton because his wife took no part.
Plaintiff emphasizes that since he is the record owner and since defendant's case is based upon a claim of right, the defendant has a heavy burden to establish his right by adverse possession. Plaintiff's counsel engages in a rather elaborate discussion in an attempt to show that defendant did not establish the requisite actual possession of the parcel claimed.
The summer cottage owned by defendant's predecessors was, to plaintiff's knowledge, located within the boundaries of the disputed parcel at the time he purchased the tract in 1921. Admittedly, the area claimed was not physically enclosed. However, with due regard to the nature and use of the land, I conclude that the defendant established for the requisite number of years an actual occupancy of a portion of the disputed parcel within that requirement of the adverse possession rule. Compare Marvel v. Barley Mill Road Homes, Del.Ch., 104 A.2d 908.
So far as the court is concerned, the real question in this case is to determine whether all or only some portion of the disputed parcel was actually and physically occupied by defendant's predecessors for at least twenty years prior to the commencement of this action.
It must be kept in mind that this is beach front property. Over the last half century the beach erosion as the result of storms has forced many "squatters" to move their cottages back. Admittedly, the cottage built by defendant's predecessor was moved back at least twice.
It is of course difficult to determine what land could fairly be said to have been physically occupied by defendant's predecessors at different times. However, defendant himself testified that the Wilson cottage was last moved back less than twenty years prior to the commencement of this action, and that it was moved back at least 30 feet. Consequently, the court must try to reconstruct the situation in the disputed area as it existed prior to 1933  before the last "move-back". In making such a determination I have placed a great deal of reliance upon the Pepper testimony. I am satisfied that when Mr. Pepper, pursuant to plaintiff's instructions, attempted in the early twenties to lay out lots embracing the land apparently used by the row of squatters  which included defendant's predecessor, he fairly determined the land area then being used by each so-called squatter including defendant's predecessor, at least insofar as the side line boundaries were concerned. Preciseness in this situation could not be expected but his approach was as reliable and as fair as possible.
I conclude that the side line boundaries (north and south lines) as set out by Mr. Pepper in his plot, which was made somewhere between 1921 and 1925, constitute the side line boundaries of the area which *331 is subject to defendant's adverse possession claim.[1]
Since the beach forms the eastern boundary I turn next to a consideration of the western boundary of the disputed parcel. Here the testimony was elaborate, conflicting and confusing. It was rendered difficult because of understandable memory failures but it was further complicated by the changes over the years in the positions of the cottages, to say nothing of the problem created by the nature of the land involved.
It is my conclusion that Mr. Pepper's survey made in 1932, in which he marked the eastern boundary line for a proposed road, and which was also then made the western boundary for the squatters' lots, should be adopted as the western boundary of the disputed parcel. In other words, it is as far west as defendant's predecessors established an unequivocal adverse right. As indicated, the testimony is in wonderous confusion, even Mr. Pepper wavered, but I think it must be concluded that the true area fairly possessed by defendant's predecessors did not extend beyond the eastern boundary line for the proposed road laid out by Mr. Pepper. Otherwise stated, I do not believe that defendant established a use beyond the eastern boundary of the road of a character which could be said to be exclusive and possessory.
Plaintiff argues at length that the squatters did not occupy any portion of the disputed parcel under a claim of right. This contention is based upon testimony that the squatters originally believed that the Government was the true owner of the land in question.
I am satisfied that the defendant's predecessors occupied the land for the required period under a claim of right. After all, more than twenty years before the action was instituted the defendant's predecessor apparently refused to "buy" a deed tendered by plaintiff covering such property. Moreover, if there were any doubt about it, it was removed when, in the early forties, plaintiff asked the defendant's predecessor in title for permission to let the military forces use the cottage. Such permission was granted. Would an owner ask permission? The testimony is overwhelmingly to the effect that plaintiff recognized the adverse nature of the status of defendant's predecessors for more than the required period.
The acts of the defendant's predecessors were basically those of persons holding under a claim of right. My conclusion is not weakened by the fact that the land was not listed as an asset when an estate of one of defendant's predecessors in title was probated. This is not too surprising when we consider that defendant's predecessor had no deed to such land and it was not the type of property which was identifiable with reference to a particular address. It was assessed to one of defendant's predecessors for many years. Similarly, I do not believe the public use of some of the area in question was inconsistent with the ripening of an adverse possession title in defendant's predecessors.
I notice that plaintiff argues that there had to be tacking here to show the requisite twenty years adverse possession. The tacking problem only arises if we start with the period after plaintiff purchased the record title. I am satisfied that the facts support the application of the tacking doctrine here. If, however, there be any doubt on this score the court will permit a reopening of the record to allow defendant to offer testimony as to possession of the disputed parcel prior to 1921. The court may have inadvertently prejudiced defendant's case in this regard by suggesting at the time the disputed area was viewed that it was only interested in evidence after plaintiff acquired his title *332 Obviously, if the adverse possession of defendant's predecessors ripened even before plaintiff purchased title, that would remove any doctrine of tacking from the case. Such evidence as there now is in the record tends to show an occupancy for upwards of fifty years.
I therefore conclude that plaintiffs are entitled to an appropriate declaration determining that defendant's ownership is as herein defined. Defendant is entitled to a judgment upon his counterclaim to the same effect.
The court will direct that the so-called second deed to defendant be cancelled if, as I believe, it relates entirely to land which I have decided belongs to plaintiff. As to the first deed, if, as I believe, it includes some land which I have decided belongs to plaintiff, the court will cause appropriate notations be made on the recorded deed, to show the true extent of the land conveyed by the deed. Other or different forms of relief may be suggested.
I have not discussed the question of abandonment because plaintiff has not briefed that point.
Plaintiff asks that the 12 foot driveway shown on the Pepper plot as forming the western boundary of defendant's property be declared a dedicated public road. Obviously, defendant has no interest in arguing to the contrary, if he, as I have found, does not own the portion of the driveway in question. Otherwise, he would have no means of access from the rear of his property to a public road. I therefore assume that he would concur in asking for a declaration that the driveway is a public road. I will so declare, at least south to the southern boundary of defendant's property as herein determined.
I am satisfied that defendant did cause the area abutting his rear property line to be filled in with sand so as to prevent its use as a road behind the cottages. An injunction will therefore issue requiring defendant to reduce the level of the road bed to that which exists in the driveway portion to the north of defendant's property. He will also be required to remove any obstructions which he has erected in the road.
Plaintiff also contends that defendant destroyed the barrier dune which protected his property. I was not satisfied that plaintiff proved that defendant was guilty of action of sufficient magnitude to justify the granting of any relief under this head. I also conclude that plaintiffs are not entitled to any money judgment for any loss of rents or for any acts of alleged waste committed on the property.
Unless counsel desire to argue the point, I conclude that the costs be assessed two-thirds against plaintiffs and one-third against defendant.
Present order on notice.
NOTES
[1] By subsequent oral stipulation the parties agreed that the sidelines should be defined according to the 1932 plot of old Broadkill Beach.