THE LEWES TRUST COMPANY, a corporation of the State of Delaware, Administrator C.T.A. of the Estate of Herbert S. Burton, Deceased, FREDERICK NEVINS, LETITIA A. BURTON, BARBARA JEAN NEVINS, JANET LOUISE NEVINS WELSH and FRANK S. WELSH, her husband, Appellants, v. ANNA L. GRINDLE and NEWTON GRINDLE, her husband, and JOSEPH H. NIBLETT and JESSIE D. NIBLETT, his wife, Appellees.

*(May* 10, 1961.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Robert W. Tunnell* and *John E. Messick* (of the firm of Tunnell and Raysor) for defendants below, appellants.

*Everett F. Warrington* for plaintiffs below, appellees.

Supreme Court of the State of Delaware, No. 40, 1960.

BRAMHALL, J.:

We think that the all-important question in this case is whether there was sufficient evidence to support the decision of the trial court to the effect that the title to the property in question rested in plaintiffs by right of adverse possession. We accordingly review the facts most favorable to plaintiffs.

Defendants are the owners of Lots No. 22 and 23, Block 61, fronting on Laurel Street, in Rehoboth Beach. Plaintiffs, Anna L. Grindle and Newton Grindle, are the owners of Lot No. 10, Block 61, and plaintiffs, Joseph H. Niblett and Jessie D. Niblett, his wife, are the owners of Lot No. 9 in the same block. Both Lots No. 9 and 10 front on Hickman Street and join in the rear Lots No. 22 and 23, fronting on Laurel Street. The boundaries of these lots are not set forth in any of the

deeds, but according to the plots thereof, each lot has a frontage of 50 ft. and a depth of 132 ft. The area in dispute consists of a narrow strip across the rear of Lots Nos. 22 and 23, having a width of 9½ ft. and a length of 100 ft. It is not described in the description in any deeds as part of Lots No. 9 and 10.

Defendants constructed a garage apartment in the rear of their lots which originally did not encroach upon the land in dispute. Later they constructed an extension or porch, which did encroach upon the disputed area. Plaintiffs instituted an action of trespass for damages and demanded that the Superior Court order the extension or porch to be removed. The trial judge entered judgment for plaintiffs, assessing damages and ordering the removal of the extension with full possession restored to plaintiffs. Defendants appeal.

The trial judge could have found from the record and, in view of his decision, it must be presumed that he did, the following to be evidence of adverse possession:

The father of plaintiffs, the original purchaser of the premises, and the seller, Robert Hinckley, at the time of the purchase of their land in 1915, placed stobs in the northeast and northwest corners of the lots, including as part thereof the disputed area. The father erected stables on the rear line of Lot No. 9, which remained until they were torn down in 1922 or 1923. He thereafter erected a shed on the northwest corner of Lot No. 10, about a foot inside the line contended for by plaintiffs. The shed remained until the spring of 1957, when it was removed. He tilled the land except where the buildings were standing right up to the line until the time of his death in 1950. The defendants made no attempt to exercise any control whatsoever over the disputed area until some time after the year 1952, when they built the extension on the garage apartment above referred to.

There was a fence erected in 1956 along the visible evidence of an old line as shown by hardened cement blocks which had been placed there when the lots were purchased in 1915. At that time the owner of the defendants' lots was called to verify the line where plaintiffs proposed to erect a fence. He agreed that the proposed line for the fence was the correct line.

During all this period, plaintiffs' father and plaintiffs occupied the premises every year, at least during the summer months.

We think that the trier of facts could have found from the evidence above referred to that plaintiffs and their predecessors in title held adverse, continuous and uninterrupted possession of the strip of land in question for a period in excess of twenty years in a manner sufficiently to give to the record owner notice that an adverse claim was being made to it by plaintiffs and their predecessors in title. *Delaware Land & Dev. Co. v. First and Central Presbyterian Church*, 16 *Del. Ch.* 410, 147 *A.* 165; *Layton v. Pittard, Del. Ch.*, 150 *A.* 2d 329; *Marvel v. Barley Mill Road Homes*, 34 *Del. Ch.* 417, 104 *A.* 2d 908; *Reed v. Short*, 5 *Terry* 103, 57 *A.* 2d 90.

Defendants question that the use of the area was uninterrupted, relying upon the alleged failure of plaintiff's evidence to show explicitly that the ground was tilled every year.

Assuming defendants' contention to be correct, this is only one of several facts evidencing adverse possession on the part of plaintiffs. Stobs were driven by the seller and purchaser at the rear of the lots at the time of the purchase of plaintiffs' lots. Cement blocks were placed on this line. At different times buildings were erected encroaching upon the disputed area.

The uninterrupted and continuous enjoyment of land to constitute adverse possession does not require the

constant use thereof. *Aldrich Mining Co. v. Pearce*, 192 *Ala.* 195, 68 *So.* 900; *Weyse v. Biedebach*, 86 *Cal. App.* 712, 261 *P.* 1086; *Ferguson v. Standley*, 89 *Mont.* 489, 300 *P.* 245. See 1 *Am. Jur.*, Adverse Possession, § 172, p. 889; 2 *C. J. S.* Adverse Possession § 125, p. 681. It need be continuous only in the sense that the claimant exercised his claim of right without interference at such times as he had reasonable use for it. Temporary breaks in cultivation, if such were the case, would not necessarily destroy the requisite continuity. See 1 *Am. Jur.*, Adverse Possession, § 172, p. 889. There must be an intention to relinquish the claim of ownership. *Bradbury v. Dumond*, 80 *Ark.* 82, 96 *S. W.* 390, 11 *L. R. A., N. S.*, 772; *Downing v. Mayes*, 153 *Ill.* 330, 38 *N. E.* 620; *Combs v. Ezell*, 232 *Ky.* 602, 24 *S. W.* 2d 301; *Hubbard v. Swofford Bros. Dry Goods Co.*, 209 *Mo.* 495, 108 *S. W.* 15. There is no evidence of any such intention in this case.

■ Defendants deny that plaintiffs' entry upon the disputed premises was made under a claim of right. We see no merit at all to this contention. It is true that mere naked possession without a claim of right or color of title will not create a title by right of adverse possession. See cases cited in 1 *Am. Jur.*, Adverse Possession, § 188, p. 897, n. 17. The term "claim of right" means nothing more than the intention of one entering land to appropriate and use it to his own use exclusively, even though he has no right or claim thereto. *Bessler v. Powder River Gold Dredging Co.*, 95 *Or.* 271, 185 *P.* 753, 187 *P.* 621. See 1 *Am. Jur.*, Adverse Possession, § 185, p. 894. To establish a claim of right, it is not necessary that one entering a property must expressly declare his intention to take and hold the property as his own. The actual entry upon and the use of the premises as if it were his own, to the exclusion of all others, is sufficient to establish a claim of right. *Carney v. Hennessey*, 74 *Conn.* 107, 49 *A.* 910, 53 *L. R. A.* 699; *Marion Investment Co. v. Virginia Lincoln Furniture Corp.*, 171 *Va.* 170, 198 *S. E.* 508, 118 *A. L. R.* 939;

*Guaranty T. and Tr. Corp. v. United States,* 44 S. Ct. 252, 264 *U. S.* 200, 68 *L. Ed.* 636.

Plaintiffs allege that if they should be successful in having the judgment of the Superior Court reversed, plaintiffs would not be entitled to damages. In view of our decision that the finding of the trial judge that plaintiffs and the other parties in interest have obtained a good and marketable title to the disputed area, this question becomes moot and we do not consider it.

The judgment of the Superior Court will be affirmed.