COURT OF CHANCERY
OF THE
STATE OF DELAWARE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

LOREN MITCHELL
MAGISTRATE IN CHANCERY

Date Submitted: November 14, 2025
Date Decided: March 6, 2026

Josiah R. Wolcott, Esquire.
Connolly Gallagher LLP
267 East Main Street
Newark, DE 19711

Zeljka Preradovic
Rade Preradovic
5 Withams Road
Newark, DE 19711

Nikola Preradovic
234 South Dillwyn Road
Newark, DE 19711

RE:  *Joseph W.C. Murray, Jr., et. al. v. Nikola Preradovic, et. al.*
C.A. No. 2023-0601-LM

Dear Counsel and Parties:

This action concerns a dispute between Plaintiffs Joseph W.C. Murray, Jr. and Danielle F. Murray, and Defendants Nikola Preradovic, Rade Preradovic, and Zeljka Preradovic regarding disputed pieces of real estate. Plaintiffs seek to establish rights to the disputed areas through adverse possession, a prescriptive easement, or an easement by necessity. Defendants assert that Plaintiffs have no right to the disputed portion of the land and that the disputed property belongs to the Defendants. For reasons that will be fully explained, the Plaintiffs prevail only as to adverse possession of the rear portion of the disputed area, and their remaining claims are denied.

This is my Final Report.

## I.    FACTUAL BACKGROUND[1]

This matter arises from a dispute between Joseph W.C. Murray, Jr. and Danielle F. Murray (collectively "Plaintiffs"), owners of 23 Pinedale Road in Newark, Delaware, and Nikola Preradovic, Rade Preradovic, and Zeljka Preradovic (collectively "Defendants"), owners of 234 South Dillwyn Road, Newark, Delaware, concerning a strip of land along Halifax Drive that includes a stone Planter, which has been described as a garden bed surrounded by stones ("Planter").[2]

### A.    The Disputed Area

The disputed section concerns a triangular area of land situated between the parties' homes. This area includes the Planter positioned outside the wooden privacy fence of 23 Pinedale and extending to the grass and sidewalk between the Planter and Halifax Drive.[3]

---

[1] The facts in this report reflect my findings based on the record developed at trial. Citations to the trial transcript are in the form "Tr. __". Citations to the Docket are cited in the form of "D.I. __". The Defendants submitted exhibits numbered 1–23 under tabs numbered 1–10. Citations to the Defendants' exhibits are cited as "DX__", with the number referring only to the exhibit, not the tab. The Plaintiffs submitted exhibits identified by tabs numbered 1–28. Due to many of these exhibits not being admitted by the Court, the tabs are no longer numbered consecutively. Citations to the Plaintiffs' exhibits are cited as "PX Tab__", followed by a page or exhibit number, if necessary. I grant the evidence the weight and credibility I find it deserves.

[2]  D.I. 83 at 1–2;  Tr. 26:3–10.

[3]  *Id.* at 8, 10.

For purposes of this action, the Plaintiffs divide the disputed land in their arguments into three categories: (1) the fence and the land enclosed within it, (2) the stone Planter, and (3) the grass area located between the Planter and Halifax Drive.[4] Although the disputed land can be described collectively as a triangular strip between the properties, these three physical components help explain the nature and location of the claimed encroachments.

First, I look at the portion of the disputed land that includes the fence and the land it surrounds. Fencing in the area includes a chain-link fence along 234 South Dillwyn (the Defendants' side) boundary and a wooden privacy fence along 23 Pinedale (the Plaintiffs' side).[5] The wooden fence has remained in substantially the same location since at least 1998, with some documented replacements in 2007 and

---

[4] D.I. 83 at 2.
[5] Tr. 119:4–10 (referring to PX Tab 7 at M196).

2022.[6] Before installation of the wooden fence, a post-and-rail fence enclosed a wedge-shaped area adjacent to the Planter along Halifax Drive and the driveway.[7]

Second, the Planter area consists of a stone-and-cement garden bed framed by roughly one-foot-tall slate stones, a retaining wall that aligns with and runs beneath portions of the fence, and drainage piping that directs water toward the street.[8] The Planter's back side forms a straight boundary facing 234 South Dillwyn, where the stones connect to the retaining wall that continues beneath the fence and terminates at the fence line. Its front side creates a small bump-out near the driveway before curving back toward the fence, with the visible stone feature ending at the fence line.[9]

Third, the disputed area consists of the grass section located between the front edge of the Planter and Halifax Drive.[10] This narrow strip of land lies between the

---

[6] Tr. 35:19–37:12 (Plaintiff Danielle Murray testifying that nothing was done about the wooden fence until 2007, and that when it was replaced it was in roughly the same location); Tr. 44:23–45:5 (Plaintiff Danielle Murray testifying that the fence was replaced a second time in 2022); Tr. 152:9–153:15 (Mr. Orth testifying that he had lived at 234 South Dillwyn from 1977 to 2002 and for roughly six months from 2006 to 2007, and that fence had been in roughly the same location the entire time); PX Tab 9 at M0080–M0081 (All American Fencing Company contract for replacement of the wooden fence in September of 2006); PX Tab 13 at M0170–M0172 (Atlantic Landscaping Company record of the wooden fence being replaced in 2022).

[7] Tr. 113:17–21.

[8] DX D23 at P316–P317; Tr. 29:3–18; Tr. 5:2–4.

[9] Tr. 27:4–8; Tr. 28:14–29:18.

[10] D.I. 83 at 2.

Planter and the roadway and forms the outermost portion of the triangular area identified by Plaintiffs.[11]

Taken together, the fence and enclosed backyard area, the stone Planter, and the grass and sidewalk between the Planter and Halifax Drive make up the triangular area that is the subject of the parties' dispute.



*For ease of reference, the triangular disputed area described above is depicted in the photograph. The white and red outlines mark the boundaries of the disputed area, while the red line extends toward Halifax Drive and separates the rear portion of the disputed land from the grass area above the line that Plaintiffs claim.*

---

[11] *See* D.I. 83 at 3 (depicting the grass and sidewalk area as the right-hand side of the disputed area triangle); Tr. 43:13–20 (Plaintiff Danielle Murray describing the strip of grass area).

B.    The Murrays

The Plaintiffs, Joseph and Danielle Murray, are husband and wife and have owned their home at 23 Pinedale since December 1998.[12] They purchased the home from John and Bonnie Burkert (the "Burkerts") on August 31, 1998.[13] The Burkerts purchased 23 Pinedale on May 16, 1980.[14] The wooden fence that was present when the Plaintiffs purchased their property from the Burkerts was installed by the Burkerts.[15]

Prior to the Plaintiffs moving into their home, as part of the sale process, a mortgage inspection plan was created by Zebley & Associates on August 28, 1998.[16] The plan depicts a wooden fence associated with 23 Pinedale and indicates that the fence extended beyond the property line onto 234 South Dillwyn.[17] The wooden fence was in place before the Plaintiffs purchased 23 Pinedale.[18] Testimony at trial

---

[12] D.I. 79 at 7.
[13] Tr. 109:1–13.
[14] Tr. 109:21–110:1.
[15] Tr. 112:5–113:10 (Testimony of Bonnie Burkert, who owned 23 Pinedale before the Plaintiffs, reflecting the wooden fence was put in when they lived there).
[16] D.I. 79 at 8.
[17] *Id.*
[18] Tr. 112:5–113:10 (Testimony of Bonnie Burkert, who owned 23 Pinedale before the Plaintiffs, reflecting the wooden fence was put in when they lived there).

also reflected that an earlier fence once extended from behind the Planter toward the driveway area.[19]  That earlier fence was later removed by the Burkerts.[20]

The Burkerts maintained the Planter while they lived at 23 Pinedale because it appeared to be part of their yard and was treated as such during their ownership.[21] After purchasing the property in 1998, the Murrays continued maintaining the backyard area within the fence and landscaping around the Planter in a similar manner.[22]

### C.     The Preradovics

The Defendants, the Preradovics, collectively own 234 South Dillwyn since December 2022.[23]  Defendants Zeljka and Rade are married and reside at 5 Withams Road, which is the street above the street of 234 South Dillwyn.[24]  They helped their son, Defendant Nikola, purchase 234 South Dillwyn, his first home in December 2022.[25]

---

[19]  Tr. 112:1–12.
[20]  Tr. 112:1–15.
[21]  Tr. 116:13–22.
[22]  D.I. 83 at 7–8;  Tr. 56:17–58:21.
[23]  D.I. 79 at 7.
[24]  Tr. 227:19–22.
[25]  Tr. 227:23–228:3.

The dispute between the parties arose shortly after the Preradovics acquired the property.[26] At that time, disagreements emerged regarding the triangular strip of land located between the two properties, including the area near the fence, the stone Planter, and the grass area extending toward Halifax Drive.[27]

### D.     Procedural Posture

The dispute formally began in June 2023, when the Murrays filed their Complaint and a Motion for a TRO.[28] In their Complaint, the Murrays asserted claims for adverse possession, a prescriptive easement, and, in the alternative, an easement by necessity over portions of the triangular area between the properties.[29] The Defendants dispute these claims.

Defendants contend the Planter was overgrown and unmaintained before their December 2022 purchase, and that Defendants undertook cleaning in December 2022–June 2023 and on May 6–7, 2023;[30] they also performed tree work in the vicinity of the disputed property before the TRO was entered.[31] The Murrays contest

---

[26] D.I. 79 at 7.
[27] Tr. 202:1–204:22 (the parties discussed the area in March and May of 2023);  D.I. 79 at 8 (Plaintiffs filed suit and for a Motion for a Temporary Restraining Order in June 2023).
[28] D.I. 1;  D.I. 2.
[29] D.I. 1 at 5–10.
[30] Tr. 9:4–10:22;  Tr. 228:8–23;  Tr. 229:20–230:10;  Tr. 247:9–20.
[31] *See* PX Tab 7 at M191–M192;  Tr. 247:9–20;  D.I. 21 (The initial Temporary Restraining Order was not ordered until September 7, 2023, well after May of 2023).

these assertions and rely on long-term maintenance records, witness testimony, and the physical placement of the fence, and retaining wall to show their continuous control of the back of the Planter.

The Court granted the TRO to preserve the status quo.[32] Over the next year, the Court denied several motions, though the TRO remained in place.[33]

The matter proceeded to a one-day trial on October 14, 2025. At trial, the Court heard testimony from the parties, former neighbors, and other witnesses, and received documentary and photographic exhibits relating to the disputed property.[34] After closing summations were submitted on November 14, 2025, the matter was taken under advisement.[35]

## II. ANALYSIS

### A. Adverse Possession

The elements of adverse possession are well-settled. The claimant must show that it had open, notorious, exclusive and hostile possession of land continuously for

---

[32] D.I. 21.
[33] D.I. 36; D.I. 38; D.I. 39; D.I. 55.
[34] D.I. 82.
[35] D.I. 83 (Plaintiffs' Closing Argument); D.I. 84 (Defendants' Closing Statement); D.I. 87 (Letter from Magistrate Mitchell confirming the receipt of the closing statements and taking the matter under advisement).

the prescribed period.[36] "Importantly . . . the burden of proof for adverse possession is only [by] a preponderance of the evidence, rather than [by] clear and convincing evidence."[37]

### 1.    The Rear Fence, Enclosed Backyard Area, and Planter

The Plaintiffs have satisfied all required elements for the fence and enclosed backyard area, but not the Planter.

### i.    Open and Notorious

"Open and notorious means that the possession must be public so that the owner and others have notice of the possession.  If possession was taken furtively or secretly, it would not be adverse and no title possession could be acquired."[38]

The record establishes that the back portion of the disputed triangular strip— running along the wooden privacy fence and the retaining wall at the rear side yard— was possessed openly and notoriously for decades.  Multiple surveys spanning more than forty years depict the 23 Pinedale wooden fence in the same encroaching location onto 234 South Dillwyn, providing objective, public notice.  The Bellafante

---

[36] *See Taraila v. Stevens*, 1989 WL 110545, at *1 (Del. Ch. Sep. 18, 1989) (citing *Suplee v. Eckert*, 160 A.2d 590 (Del. Ch. 1960));  *see also Ayers v. Pave It, LLC*, 2006 WL 2052377, at *2 (Del. Ch. July 11, 2006).

[37] *Tumulty v. Schreppler*, 132 A.3d 4, 24 (Del. Ch. 2015) (citing *Ayers*, 2006 WL 2052377, at *2).

[38] *Bogia v. Kleiner*, 2019 WL 3761647, at *10 (Del. Ch. Aug. 8, 2019) (citations omitted).

Mortgagee's Inspection Plan (May 2, 1980; rev. Oct. 20, 1992), the Zebley & Associates Mortgage Inspection Plan (Aug. 28, 1998), and the AESM Boundary Survey Plan (Dec. 1, 2022) each show the 23 Pinedale fence situated over the line onto 234 South Dillwyn.[39]

Plaintiffs and their predecessors maintained a visible, enclosed backyard defined by that fence and an aligned retaining wall, with the fence having been replaced around the same position in 2007 and again in 2022.[40]  Brett Orth testified the wooden privacy fence belonging to 23 Pinedale remained in the same approximate location and was not objected to by his family.[41]

Photographs and records show persistent backyard improvements and maintenance within the enclosed area and along the retaining wall and fence line—flower beds, vegetation, patio elements, and pet burials—further signaling open, notorious occupation.[42]  Additionally, landscaping and mowing practices visibly

---

[39]  D.I. 1 at 2–3, 6;  PX Tab 3 at M0005 (the Franco Bellafante Associates Mortgagee's Inspection Plan survey);  PX Tab 2 at M0003 (the Zebley & Associates, Inc. Mortgage Inspection Plan survey);  DX D2 (the American Eastcoast Surveying & Mapping Boundary Survey Plan).
[40]  PX Tab 9 at M0080–M0081 (the All American Fence Company agreement to replace the wooden fence in 2006);  PX Tab 13 at M0170–M0172 (the Atlantic Landscapes Company agreement to replace the wooden fence in 2022);  Tr. 36:3–16;  Tr. 44:23–45:5.
[41]  Tr. 152:6–153:23.
[42]  PX Tab 2 at M0003;  PX Tab 3 at M0005;  D.I. 1 at 3–4;  *see generally* PX Tab 7 at M0069–M0092, M0124, M0175, M0181–M0183 (The photographs provided by the Plaintiffs' exhibit that they have maintained varying, continuous use of the back of the

adhered to the retaining wall line at the back of the Planter and did not extend behind it, underscoring Plaintiffs' consistent treatment of the fence and retaining-wall alignment as their boundary of possession at the rear.[43]

By contrast, the front portion—comprising of the stone Planter area—lacks comparable, continuous outward manifestations of exclusive possession sufficient to render the use open and notorious.[44] Trial testimony and exhibits reflect that, while Plaintiffs mowed up to the back of the Planter and maintained its side, maintenance at the front diminished over time and was not continuous.[45]

---

Planter for many years. In 1998, the Plaintiffs seemed to maintain and care for the back of the Planter which was already inside of the original wooden privacy fence. As shown in the 2006 photos, their use evolved into using the area to host parties and other gatherings. Their use continued to evolve in 2007, when the area was used for what are assumedly school projects. In 2008, the Plaintiffs continued their use by erecting a playhouse that August in the area and by 2016 had grown a small flowerbed and placed a beehive and small statue there. The beehive and statue remained in that area in March of 2023, evidencing continued use. Taken as a whole, these photographs point to the Plaintiffs' having continuously used the property and treated it as their own for roughly 25 years, beyond the statutory requirement.).

[43] Tr. 18:17–20:1 (Mr. Foster testifying that he mowed up to the back of the Planter, but this does not show that the Plaintiffs continuously mowed the area in dispute identified as the Planter).

[44] *See generally* PX Tab 7 at M0065, M0129–M0142, M0180–M0183 (Plaintiffs' photographs of the Planter and the grass between the front of the Planter and Halifax Drive).

[45] Tr. 249:14–250:7; Tr. 23:4–7 (Defendant Rade Preradovic also mowed the area in front of the Planter starting in December 2022); Tr. 18:17–20:1 (Mr. Foster testifying that he mowed up to the back of the Planter); PX Tab 7 at M0180–M0183 (Photographs of the area in front of the Planter from March of 2023 show a much less maintained Planter and grass in front of it).

Contemporaneous trial observations indicate that Plaintiffs stopped maintaining the front area near the Planter.[46] Defendants at Trial testified that before Defendants cleaned up the area in 2023, dense vegetation near the Planter limited access and reduced the visibility of Plaintiffs' claimed possession in that segment.[47]

The comparative proof thus distinguishes the segments: the back portion's fixed, survey-corroborated fence and aligned retaining wall, visibly maintained and replaced over decades, contrasts with the front portion's intermittent mowing up to the Planter and periods of overgrowth without clear, outward acts of dominion.[48]

### ii. Continuous

Adverse possession must be continuous for a statutory period of 20 years.[49] "The Delaware Supreme Court previously . . . held that the 'uninterrupted and

---

[46] *See* Tr. 9:4–9; Tr. 23:4–7 (Defendant Rade Preradovic also mowed the area in front of the Planter starting in December 2022); *see* Tr. 18:17–20:1 (Mr. Foster testifying that he mowed up to the back of the Planter); *see* PX Tab 7 at M0180–M0183 (Photographs of the area in front of the Planter from March of 2023 show a much less maintained Planter and grass in front of it); *see* DX D15 at P411, P415; P418, P419, and P420, consistently depict the disputed area—particularly the Planter—as being in poor, overgrown, or jungle-like condition.

[47] Tr. 10:3–22; Tr. 247:9–20; PX Tab 7 at M0180–M0183; DX D15 at P411, P415.

[48] *Compare* PX Tab 7 at M0069–M0092, M0124, M0175, M0181–M0183 (showing a visibly maintained and improved back of the Planter and retaining wall), *with* PX Tab 7 at M0180–M0183 (showing an overgrown and not visibly maintained nor improved Planter and grass in front of it).

[49] *Tumulty*, 132 A.3d at 24.

continuous enjoyment of land to constitute adverse possession does not require the constant use thereof."'[50]

The record demonstrates continuous possession of the back portion—namely, the area enclosed and defined by the six-foot wooden privacy fence and the aligned retaining wall—for well over twenty years. Plaintiffs have lived at 23 Pinedale without interruption since December 1, 1998,[51] and have continuously maintained both the fenced yard and the fence itself during that time.[52] They replaced the fence in 2007 and again in 2022 around the same location as the original fence.[53]

Historic surveys place the wooden fence on or over the 234 South Dillwyn side of the property line in the same long-standing position.[54] This consistent, publicly visible boundary marker corroborates an uninterrupted pattern of possession.[55] Plaintiffs and their contractors also performed repairs to the retaining

---

[50] *Id.* (quoting *Lewes Tr. Co. v. Grindle*, 170 A.2d 280, 282 (Del. 1961)).
[51] D.I. 79 at 7.
[52] *Id.* 2.
[53] *Id.* at 8; PX Tab 3 at M0005 (the Franco Bellafante Associates Mortgagee's Inspection Plan survey); PX Tab 2 at M0003 (the Zebley & Associates, Inc. Mortgage Inspection Plan survey); DX D2 (the American Eastcoast Surveying & Mapping Boundary Survey Plan).
[54] D.I. 79 at 7–8.
[55] *See generally* PX Tab 7 at M0067–M0183 (The wooden fence was and is plainly visible to the public and the Defendants and is still present in the March 2023 photographs).

wall supporting the fence—work the Court admitted as relevant to demonstrate possession and control.[56]

Testimony and photographs show regular residential use and maintenance inside the fence line for decades, including mowing up to the retaining wall, gardening, and other home-improvement activities.[57] Former neighbor Brett Orth corroborated that the fence has remained in the same location since at least the late 1970s and that it was understood as belonging to and maintained by 23 Pinedale, not by the owners of 234 South Dillwyn.[58] This testimony reinforces the exclusivity,

---

[56] PX Tab 13 at M0170–M0172; Tr. 49:1–21.

[57] Tr. 45:14–18 (Plaintiff Danielle Murray testifying that she maintained the flower bed inside the fence line); Tr. 20:8–13 (Mr. Foster testifying that Plaintiff Danielle Murray directed where to mow and that Plaintiffs paid him for that work); Tr. 18:14–22 (Mr. Foster testifying that he mowed the entire backyard up to the fence line); Tr. 20:21–21:8 (Mr. Foster clarifying on cross-examination that he mowed up to the retaining wall in the backyard inside the fence line); *see generally* PX Tab 7 at M0069–M0092, M0124, M0175, M0181–M0183 (The photographs provided by the Plaintiffs' exhibit that they have maintained varying, continuous use of the back of the Planter for many years. In 1998, the Plaintiffs seemed to maintain and care for the back of the Planter which was already inside of the original wooden privacy fence. As shown in the 2006 photos, their use evolved into using the area to host parties and other gatherings. Their use continued to evolve in 2007, when the area was used for what are assumedly school projects. In 2008, the Plaintiffs continued their use by erecting a playhouse that August in the area and by 2016 had grown a small flowerbed and placed a beehive and small statue there. The beehive and statue remained in that area in March of 2023, evidencing continued use. Taken as a whole, these photographs point to Plaintiffs' having continuously used the property and treated it as their own for roughly 25 years, beyond the statutory requirement.).

[58] Tr. 152:24–153:15; Tr. 87:17–89:8 (Plaintiff Danielle Murray testifying that the Orths had told Plaintiffs that the fence line had been established in the 1960s and 1970s).

visibility, and continuity of Plaintiffs' possession of the back portion of the disputed land.

Despite the above, the evidence does not establish twenty years of continuous possession of the front grass portion of the Planter.[59]  Defendants credibly testified that when they purchased 234 South Dillwyn in December 2022, the Planter and surrounding front area appeared overgrown and jungle-like.[60]  They undertook cleanup and tree-cutting around the Planter in May 2023.[61]  Photographs and testimony referencing substantial ivy and accumulated vegetation support their account.[62]

Additionally, maintenance of the Planter occurred "up to the back of the Planter," but "not behind the Planter," meaning not into the street-facing frontage that forms the disputed portion.[63]  This line of maintenance reflects a practical boundary short of the entire front area.[64]  Plaintiffs acknowledged that ivy from the

---

[59]  *See generally* PX Tab 7 at M0180–M0183 (Plaintiffs failed to adequately show continuous possession since at least March of 2023, as these photographs show an overgrown and unmaintained Planter and the grass in front of it.).
[60]  *Id.*; Tr. 9:4–9.
[61]  D.I. 21 (The initial Temporary Restraining Order was not ordered until September 7, 2023, well after May of 2023.); Tr. 235:9–21; Tr. 247:7–248:13; Tr. 9:4–11:18.
[62]  DX D15 at P415;  DX D15 at P411.
[63]  Tr. 43:16–20;  Tr. 19:12–20:1.
[64]  Tr. 43:16–20;  Tr. 18:23–20:1.

Planter could make the front look "a little wild," and images from 2023 show ivy, branches, and debris along the front side, rather than continuous maintenance.

On this record, Plaintiffs have not met their burden to show continuous possession of the front portion for the statutory period.

### iii. Exclusive Use

"The exclusivity element does not require absolute exclusivity. 'Exclusive possession means that the adverse possessor must show exclusive dominion over the land and an appropriation of it to his or her benefit.'"[65]

The back portion of the disputed property, enclosed by the wooden fence and aligned with the retaining wall, was exclusively possessed by the Murrays.[66] This area was consistently maintained and improved by the Plaintiffs, who exercised clear

---

[65] *See Tumulty*, 132 A.3d at 26 (quoting *Walker v. Five N. Corp.*, 2007 WL 2473278, at *4 (Del. Super. Ct. Aug. 31, 2007)).

[66] *See generally* PX Tab 7 at M0069–M0092, M0124, M0175, M0181–M0183 (The photographs provided by the Plaintiffs' exhibit that they have maintained varying, continuous use of the back of the Planter for many years. In 1998, the Plaintiffs seemed to maintain and care for the back of the Planter which was already inside of the original wooden privacy fence. As shown in the 2006 photos, their use evolved into using the area to host parties and other gatherings. Their use continued to evolve in 2007, when the area was used for what are assumedly school projects. In 2008, the Plaintiffs continued their use by erecting a playhouse that August in the area and by 2016 had grown a small flowerbed and placed a beehive and small statue there. The beehive and statue remained in that area in March of 2023, evidencing continued use. Taken as a whole, these photographs point to Plaintiffs' having continuously used the property and treated it as their own for roughly 25 years, beyond the statutory requirement.).

dominion over it by replacing the fence and conducting regular landscaping activities. The presence of the fence, which has been in place since at least 1980, served as a physical barrier that delineated the Murrays' control and excluded others.[67] Testimony and photographic evidence confirm that the Murrays treated this area as an integral part of their backyard, reinforcing their exclusive use and appropriation of the land for their benefit.[68]

In contrast, the Planter was not exclusively possessed by the Plaintiffs.[69] Evidence suggests that maintenance of this area was sporadic, with periods of overgrowth and limited activity.[70] The Planter was accessible from both properties, and testimony from neighbors and the Defendants highlighted that the area was not

---

[67] D.I. 79 at 7–8; Tr. 152:24–153:15; Tr. 87:17–89:8; *see also* PX Tab 7 at M0124 (This photograph depicts 232 South Dillwyn and the fence from Plaintiffs' backyard, showing that the fence physically separated the two properties and excluded Defendants from Plaintiffs' backyard area within the fence.).

[68] D.I. 79 at 7–8; *see generally* PX Tab 7 at M0069–M0092, M0124, M0175, M0181–M0183 (These photographs depict Plaintiffs' varied uses of the fenced-in backyard area over the years including for parties, what is assumedly a school project, and as a flower bed. These uses show that Plaintiffs have appropriated this land for their benefit and use, and not for others' use. The photographs also depict landscaping within the fenced area, including the planting and maintenance of a Japanese maple tree, further evidencing Plaintiffs' treatment of the area as part of their yard.).

[69] *See generally* PX Tab 7 at M0180–M0183 (showing an overgrown Planter area); *see also* Tr. 248:6–8; *see also* Tr. 249:9–250:6.

[70] *Compare* PX Tab 7 at M0069–M0092, M0124, M0175, M0181–M0183 (showing a visibly maintained and improved back of the Planter and retaining wall), *with* PX Tab 7 at M0180–M0183 (showing an overgrown and not visibly maintained nor improved Planter and grass in front of it).

consistently maintained.[71] Consequently, the Plaintiffs failed to demonstrate the necessary exclusive dominion over the front portion to satisfy the exclusivity requirement for adverse possession.

### iv.    Hostile Use

"Hostility refers to use of property in a manner that is inconsistent with the rights of the true owner, as if the adverse possessor owns the property."[72]   The Murrays' actions regarding the back portion of the property illustrate this principle. They consistently maintained and improved the area within the fence, treating it as their own without seeking permission from the "true" owner.[73]  This conduct reflects their belief in ownership and is supported by the lack of any objection or assertion of title by prior owners before 2014.[74]  The Murray's longstanding use and tradition of maintaining the back fenced area reinforces their adverse claim to the property.[75]

---

[71] Tr. 248:6–8;  Tr. 249:9–250:6;  Tr. 9:4–9;  Tr. 10:9–14.

[72]  *Beard v. Davis*, 2024 WL 357998, at *4 (Del. Ch. Jan. 31, 2024) (quoting 2 C.J.S. *Adverse Possession* § 62 (2025).

[73]  *See generally* PX Tab 7 at M0069–M0092, M0124, M0175, M0181–M0183 (depicting Plaintiffs' varied uses of the fenced-in backyard area over the years);  Tr. 87:17–89:8 (Plaintiff Danielle Murray testified that she does not recall having a conversation over whether there had been consent given regarding the fence encroachment.);  Tr. 170:5–10 (Mr. Orth testified that he does not recall if his parents gave consent to the former owners or Plaintiffs for the fence encroachment).

[74]  Tr. 88:22–89:8;  Tr. 170:5–10.

[75]  *See generally* PX Tab 7 at M0069–M0092, M0124, M0175, M0181–M0183 (depicting Plaintiffs' varied uses of the fenced-in backyard area over the years);  Tr. 153:12–23 (Mr. Orth testified that as long as he can remember, the fence belonged to and was maintained

In contrast, the front portion, does not demonstrate the same level of hostile use.[76] Evidence and testimony show that the front area was accessible to others and not exclusively used by the Murrays in a manner that would indicate ownership.[77]

Thus, the Court awards Plaintiffs the back portion of the disputed land through adverse possession. However, Plaintiffs have not proved the required elements of adverse possession for the Planter area.

### 2.     The Grass Area Between the Planter and Halifax Drive

Plaintiffs also seek to establish adverse possession over the narrow strip of grass located between the front edge of the Planter and Halifax Drive.[78] This portion of the disputed area lies outside the enclosed backyard and extends toward the roadway, forming the outermost section of the triangular area identified by Plaintiffs. Although Plaintiffs contend that they maintained this portion of the property for many years, the record does not establish the elements necessary to support a claim of adverse possession over this area.

As discussed above, a party claiming title through adverse possession must prove that its possession of the disputed land was open, notorious, exclusive, hostile,

---

by the owners of 23 Pinedale Road, including Plaintiffs. He had lived in the home from roughly 1977 to 2002, and Plaintiffs purchased the property in late 1998.).

[76] Tr. 10:9–16.

[77] Tr. 248:6–8; Tr. 249:9–250:6; Tr. 9:4–9; Tr. 10:9–14.

[78] D.I. 83 at 3.

and continuous for the statutory period.[79]  These elements must be shown through conduct that clearly signals that the claimant is asserting dominion over the land as its own.  Routine or incidental acts of maintenance, particularly in areas that remain open to public view or public access, generally do not satisfy this standard.[80]

At trial, Plaintiffs presented evidence that they periodically mowed the grass in the area between the Planter and Halifax Drive.[81]  Testimony from Plaintiffs' lawn-care provider similarly indicated that mowing extended to portions of the grass near the Planter and toward the street.[82]  While this evidence demonstrates that Plaintiffs performed *some* maintenance in this area, those activities are not sufficient to establish the type of possession required for adverse possession.[83]

---

[79] *See Taraila v. Stevens*, 1989 WL 110545, at *1 (Del. Ch. Sep. 18, 1989) (citing *Suplee v. Eckert*, 160 A.2d 590 (Del. Ch. 1960));  *see also Ayers v. Pave It, LLC*, 2006 WL 2052377, at *2 (Del. Ch. July 11, 2006).

[80] *Ocean Baltimore, LLC v. Celebration Mall, LLC*, 2021 WL 1906374, at *8 n.107 (Del. Ch. May 12, 2021).

[81] Tr. 249:14–250:7;  Tr. 23:4–7 (Defendant Rade Preradovic also mowed the area in front of the Planter starting in December 2022);  Tr. 18:17–20:1 (Mr. Foster testifying that he mowed up to the back of the Planter);  PX Tab 7 at M0180–M0183 (Photographs of the area in front of the Planter from March of 2023 show a much less maintained Planter and grass in front of it).

[82] Tr. 19:9–14.

[83] Tr. 249:14–250:7;  Tr. 23:4–7 (Defendant Rade Preradovic also mowed the area in front of the Planter starting in December 2022);  Tr. 18:17–20:1 (Mr. Foster testifying that he mowed up to the back of the Planter);  PX Tab 7 at M0180–M0183 (Photographs of the area in front of the Planter from March of 2023 show a much less maintained Planter and grass in front of it).

Additionally, Plaintiffs' activities in this area do not clearly establish hostile possession under a claim of right. Although Plaintiffs testify that they mowed that portion of the grass when they mowed their own, mowing grass is more like an ordinary act of neighborhood upkeep. Such activity does not communicate an assertion of ownership over the underlying land.[84] Testimony and photographs show that the front area remained open, sometimes overgrown, and was used or accessed by Defendants.[85] Shared and casual use of land does not satisfy the exclusivity requirement and instead supports an inference of permissive use.

Taken together, the evidence regarding mowing maintenance does not demonstrate that Plaintiffs possessed this strip of land in a manner that was sufficiently exclusive, hostile, and notorious to satisfy the requirements of adverse possession. Instead, the conduct reflected on the record is more consistent with

---

[84] Photographic exhibits such as DX D5 at P39, DX D6 at P20, and DX D15 at P411, P418, P419, and P420, consistently depict the disputed area—particularly the Planter—as being in poor, overgrown, or jungle-like condition. These visuals corroborate testimony such as Tr. 248:6–250:6, which shows that at various times up to and including 2022 and 2023, the area was unmaintained, inaccessible, and rife with overgrowth. This evidence directly rebuts the exclusive and continuous maintenance argued by Plaintiffs.

[85] PX Tab 7 at M0180–M0183 (showing an overgrown and not visibly maintained nor improved Planter and grass in front of it); Photographic exhibits such as DX D5 at P39, DX D6 at P20, and DX D15 at P411, P418, P419, and P420, consistently depict the disputed area as being in poor, overgrown, or jungle-like condition. These visuals corroborate testimony such as Tr. 248:6–250:6, which shows that at various times up to and including 2022 and 2023, the area was unmaintained, inaccessible, and rife with overgrowth. This evidence directly rebuts the exclusive and continuous maintenance argued by Plaintiffs.

routine maintenance performed by a homeowner along the frontage of a residential property. Therefore, the Plaintiffs did not adversely possess this section of the disputed land.

## B. Prescriptive Easement

To assert a claim for a prescriptive easement, Claimants must show that they used the property: "(i) openly, (ii) notoriously (iii) exclusively and (iv) adversely to the rights of others for an uninterrupted period of twenty (20) years."[86] All elements must be proved by clear and convincing evidence, which is a higher standard than the prior claim of adverse possession which requires a preponderance of the evidence.[87] Generally, Delaware disfavors claims for prescriptive easements.[88] The use of a prescriptive easement "must be so open, visible, and apparent that it gives the owner of the servient tenement knowledge and full opportunity to assert his or her rights."[89]

"As this court has explained, the latter prong of the test includes a duty to prove by clear and convincing evidence that the use was not permissive."[90] That

---

[86] *Dewey Beach Lions Club, Inc. v. Longanecker*, 905 A.2d 128, 134 (Del. Ch. 2006) (citing *Ayers*, 2006 WL 2052377, at *2).
[87] *See id.*
[88] *See id.*
[89] *Id.* at 135 (quoting 25 AM. JUR. 2D *Easements and Licenses* § 53 (2025)).
[90] *Id.*

burden, which Delaware law applies to all prescriptive easements, is especially appropriate where a litigant claims a prescriptive right over a neighbor's roadway or path.[91] "Part of the logic behind this enhanced scrutiny is simply that land left open to be used by the public for the convenience of the landowner should not be indefinitely burdened by a prescriptive easement, which our law disfavors, simply because the landowner has not taken the active step of granting users of the land express permission."[92]

Further, "neighborly or friendly use of land, whether a roadway, open land, or otherwise, does not establish an adverse use."[93] "Simply put, taking neighborly acquiescence for the kind of laxity required for the establishment of a prescriptive easement is not a rule in accordance with the law of this state."[94]

First, the record does not demonstrate adversity. The evidence reflects, at most, tolerance of Plaintiffs' trimming or incidental contact with the front of the Planter—not a hostile or claim-of-right use that would put the servient owner on

---

[91]  *Id.*

[92]  *Id.*

[93]  *Id.* at 136 (citing *Brown v. Hou. Ventures, LLC*, 2003 WL 136181, at *6 n. 30 (Del. Ch. Jan. 3, 2003)).

[94]  *Id.*

notice.[95]  Nothing in the record shows a clear repudiation of permission or any assertion of a right to control the street-facing portion of the Planter.

The same reasoning applies to the grass area located between the Planter and Halifax Drive.[96] Any mowing of the grass by Plaintiffs reflects routine upkeep rather than an assertion of dominion over the land itself.  Such activities are consistent with ordinary residential maintenance and do not communicate a hostile claim of right to the underlying property.

Second, the evidence does not establish exclusive use.  Testimony and photographs show that the front area remained open, overgrown, and used or

---

[95] Photographic exhibits such as DX D5 at P39, DX D6 at P20, and DX D15 at P411, P418, P419, and P420, consistently depict the disputed area—particularly the Planter—as being in poor, overgrown, or jungle-like condition.  These visuals corroborate testimony such as Tr. 248:6–250:6, which shows that at various times up to and including 2022 and 2023, the area was unmaintained, inaccessible, and rife with overgrowth.  This evidence directly rebuts the exclusive and continuous maintenance argued by Plaintiffs.

[96] *See generally* PX Tab 7 at M0180–M0183 (Plaintiffs failed to adequately show continuous possession since at least March of 2023, as these photographs show an overgrown and unmaintained Planter and the grass in front of it.);  Photographic exhibits such as DX D5 at P39, DX D6 at P20, and DX D15 at P411, P418, P419, and P420, consistently depict the disputed area as being in poor, overgrown, or jungle-like condition.  These visuals corroborate testimony such as Tr. 248:6–250:6, which shows that at various times up to and including 2022 and 2023, the area was unmaintained, inaccessible, and rife with overgrowth.  This evidence directly rebuts the exclusive and continuous maintenance argued by Plaintiffs.

accessed by Defendants.[97]  Shared or casual use of land, does not satisfy the exclusivity requirement and instead supports an inference of permissive use.

Third, Plaintiffs have not proven open and notorious conduct sufficient to notify a reasonable owner of a hostile claim.  The intermittent activities like sporadic trimming and mowing that stopped at the back of the Planter falls short of the type of visible assertion of dominion needed to meet the standard.[98]  The evidence regarding the maintenance of the front grass area likewise reflects only intermittent maintenance activities rather than the continuous and exclusive use required to establish a prescriptive easement.[99]

Fourth, Plaintiffs cannot show an uninterrupted twenty-year period of qualifying use.  The front portion's condition—overgrown, unmanaged, and

---

[97] Tr. 10:9–14; Tr. 11:19–12:3; *see* PX Tab 7 at M0180–M0183 (showing an overgrown and not visibly maintained nor improved Planter and the grass in front of it).

[98] *See* PX Tab 7 at M0069–M0092, M0124, M0175, M0181–M0183 (photographs showing varied, continuous use of the property from 1998 until March of 2023); *see also* DX D15 at P411, P415 (These photographs further show that, at the very most, Plaintiffs casually maintained the Planter and it often became overgrown.  Casual, sporadic maintenance of such an open, visible, and easily accessible space can sometimes be considered insufficiently open and notorious.).

[99] Although Plaintiffs presented testimony that Mr. Foster performed landscaping maintenance in the area, the photographic record does not demonstrate continuous upkeep. *See generally* PX Tab 7 at M0180–M0183 (Plaintiffs failed to adequately show continuous possession since at least March of 2023, as these photographs show an overgrown and unmaintained Planter and the grass in front of it.).  These visuals corroborate testimony such as Tr. 248:6–250:6, which shows that at various times up to and including 2022 and 2023, the area was unmaintained, inaccessible, and rife with overgrowth.  This evidence directly rebuts the exclusive and continuous maintenance argued by Plaintiffs.

periodically cleaned or cut back by Defendants only after their 2022 purchase—demonstrates breaks in any claimed pattern and confirms that Plaintiffs did not exercise continuous dominion over the area.[100]

Because Plaintiffs failed to establish continuity, adversity, and exclusivity for the front portion under their adverse-possession theory, they likewise fail to meet the same elements for a prescriptive easement. Accordingly, Plaintiffs have not carried their burden to prove a prescriptive easement over the front of the Planter and over the grass area between the Planter and Halifax Drive.

### C. Easement by Necessity

"An easement by necessity is an easement created by the presumption that where a landowner subdivides his property to create a landlocked parcel, without creating some access to that parcel, the landowner is presumed to have intended an easement to provide access across the non-landlocked (servient) parcel to the landlocked (dominant) parcel."[101] Necessity is assessed "at the time of severance."[102] Further, "an easement of necessity is a form of implied easement,

---

[100] Photographic exhibits such as DX D5 at P39, DX D6 at P20, and DX D15 at P411, P418, P419, and P420, consistently depict the disputed area—particularly the Planter—as being in poor, overgrown, or jungle-like condition. This evidence directly rebuts the exclusive and continuous maintenance argued by Plaintiffs.

[101] *Muchille v. Bechtol*, 2025 WL 1835977, at *3 (Del. Ch. July 3, 2025) (quoting *Dewey Beach Lions Club, Inc.*, 2006 WL 701980, at *2).

[102] *Id.* (quoting *Harris v. Limon-Nunez*, 2021 WL 8741647, at *6 (Del. Ch. Oct. 22, 2021)).

since necessity (like the existence of a quasi–easement) allows a court to infer that the grantor intended to reserve access."[103]

"While the concepts are related, 'an easement by necessity [is] analytically distinct from an implied easement arising from a preexisting use."[104]   The Court continued that "[i]f a landowner landlocks one parcel by conveying another, an easement of necessity will arise across the conveyed land, even if no quasi–easement existed."[105]   Additionally, "[t]his necessity is assessed 'at the time of the severance.'"[106]  "In essence, it is presumed that the parties intended a way-of-access to the dominant tenement over the servient tenement because it is unlikely that anyone would purchase land to which there is no access."[107]  "The burden of proof is on the proponent to show an absolute necessity as of the time the parcels were separated."[108]  Finally,  "[t]he scope of an easement of necessity would normally be that required to provide reasonable access to the benefitted parcel."[109]

---

[103]  *Judge v. Rago*, 570 A.2d 253, 258 n.4 (Del. 1990) (citing *Pencader Assocs., Inc. v. Glasgow Tr.*, 446 A.2d 1097, 1099–1100 (Del. 1982)).

[104]  *Harris*, 2021 WL 8741647, at *6 (quoting *Judge*, 570 A.2d 253, 258 n.4 (Del. 1990)).

[105]  *Id.* (citing *Judge*, 570 A.2d at 258 (Del. 1990)).

[106]  *Id.*

[107]  *Id.* (citing *Pencader Assocs., Inc. v. Glasgow Tr.*, 446 A.2d 1097 at 1099–1100(Del. 1982)).

[108]  *Id.* (citing *Dewey Beach Lions Club, Inc. v. Longanecker,* 2006 WL 701980, at *2 (Del. Ch. Feb. 24, 2006).

[109]  *Id.* (citing *Larsen v. Lobiondo*, 1994 WL 30538, at *8 (Del. Ch. Jan. 13, 1994).

As an alternative cause of action, the Plaintiffs claim an easement by necessity over the Defendants' property. However, the evidence does not support this claim. Historical records and surveys, including the Bellafante Plan and Zebley Plan, show that 23 Pinedale has always had direct access to public roads, negating the claim of being landlocked.[110] Testimony from prior owners, such as Brett Orth, confirmed that access to 23 Pinedale was never obstructed and that the property was not landlocked at the time of any severance.[111] Moreover, aerial photographs illustrate clear access routes to the property, further undermining the necessity claim.[112] The facts do not support that Plaintiffs have a necessity for access across the Defendants' land.

Therefore, the disputed area of the Planter and the narrow strip of grass between the Planter and Halifax Drive, does not provide the sole or necessary means of ingress or egress to Plaintiffs' property. Given the lack of evidence supporting a landlocked condition and the presence of existing access routes, the Plaintiffs are not

---

[110] PX Tab 3 at M0005 (the Franco Bellafante Associates Mortgagee's Inspection Plan survey); PX Tab 2 at M0003 (the Zebley & Associates, Inc. Mortgage Inspection Plan survey); DX D2 (the American Eastcoast Surveying & Mapping Boundary Survey Plan); Tr. 43:9–15 (describing the location of the Planter relative to the road); Tr. 67:1–18 (Plaintiff Danielle Murray alleging how Plaintiffs' access to their driveway would be cut off); Tr. 96:10–97:11; Tr. 115:6–19.
[111] Tr. 13:9–13; Tr. 96:18–97:11.
[112] PX Tab 7 at M214.

entitled to an easement by necessity over the front of the Planter or over the grass area adjacent to Halifax Drive.

## III.   CONCLUSION

For the reasons stated herein, I find that the Plaintiffs have not established adverse possession of the Planter area or the front grass portion of the disputed area because the evidence does not demonstrate exclusive, continuous, or hostile use for the statutory period.  By contrast, Plaintiffs have proven adverse possession of the back portion.  The Plaintiffs are not entitled to an easement by necessity.  The Plaintiffs have not met their burden to establish a prescriptive easement, as the record lacks clear and convincing evidence.

Finally, the Court denies the request that the Murrays be ordered to pay rent of $1,500 per year for their occupancy of the disputed land.  The Court finds no enforceable agreement of rent between the parties and no justifiable reason to create one under these circumstances. Accordingly, the Defendant's request for rent is therefore denied.

This is my Final Report, and exceptions may be filed under Court of Chancery Rule 144.

Respectfully submitted,
*/s/ Loren Mitchell*
Magistrate in Chancery